Argued September 28, reversed November 1, 1976

# PORTLAND ASSOCIATION OF TEACHERS et al,
## *Respondents,*
### *v.*
# SCHOOL DISTRICT NO. 1, MULTNOMAH
# COUNTY, *Petitioner.*
## (No. C-526, CA 6283)

555 P2d 943

*Mark C. McClanahan,* Portland, argued the cause for petitioner. With him on the brief were Bruce E. Spiedel, and Miller, Anderson, Nash, Yerke & Wiener, Portland.

*Edward P. Heid,* Eugene, argued the cause for respondents. With him on the brief was Kulongoski, Heid, Durham and Drummonds, Eugene.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

School District No. 1 of Multnomah County (the District) appeals from an order of the Employment Relations Board (ERB) adjudging it guilty of an unfair labor practice.

On May 14, 1974, the Portland Association of Teachers (PAT) and the District entered into a collectively bargained "professional agreement" for the 1974-75 school year. The agreement established a grievance procedure which culminates in the submission of grievances to arbitration. On October 17, 1974, PAT and a group of elementary school teachers initiated the grievance procedure by filing a written complaint with the District, alleging that the District was in violation of both Article 3, § B, of the professional agreement and Oregon Administrative Rule, ch 581, § 22-055(3)(a), promulgated by the Oregon State Board of Education, which specified the maximum number of pupils allowable in classes in certain grade levels. The District refused to process the complaint as a grievance.

On December 4, 1974, PAT filed an unfair labor practice complaint with ERB alleging that the District had violated ORS 243.672(1)(g)[1] by refusing to process PAT's complaint as a grievance. After a hearing, ERB's hearing officer proposed that the District be found in violation of ORS 243.672(1)(g) and be ordered to process PAT's complaint as a grievance. In his proposed findings, the hearing officer stated that he would not determine whether PAT's complaint constituted a grievance under the agreement, but that that determination should be made in the first instance by an arbitrator. On March 9, 1976, ERB adopted the findings and recommendations of the hearing officer.

The initial issue is whether ERB had a duty to

---

[1] ORS 243.672(1)(g) provides:

"It is an unfair labor practice for a public employer or its designated representative to * * * [v]iolate the provisions of any written contract with respect to employment relations * * *."

[ 249 ]

determine if PAT's complaint constituted a grievance under the agreement. The resolution of this issue turns upon the scope of ERB's duties as defined by ORS 243.676, the statute which prescribes the procedures to be followed by the agency. Upon the receipt of an unfair labor complaint, ERB is required to first investigate the complaint to determine whether a hearing on the complaint is warranted. ORS 243.676(1)(b). After a hearing, ERB must then determine whether any person named in the complaint has engaged in or is engaging in any unfair labor practice charged in the complaint. ORS 243.676(2)(a). These requirements as applied to this case can only mean that ERB had to determine whether the District was required by the terms of the professional agreement with PAT to process PAT's complaint as a grievance. ORS 243.672(1)(g). It necessarily follows that in order to so determine, ERB was required to look to the professional agreement's definition of grievable matters.

■■   An analogous situation arises when one party to a contract or labor agreement sues to enjoin arbitration on the grounds that the contract or agreement does not grant an arbitrator authority to resolve a particular dispute. When the contract or labor agreement is clear on its face as to which issues are arbitrable, the determination of arbitrability should be made by a court and not by an arbitrator. *John Wiley & Sons v. Livingston,* 376 US 543, 84 S Ct 909, 11 L Ed 2d 898 (1964); *Dept. of Human Res. v. Williams,* 12 Or App 133, 505 P2d 936 (1973); M. Domke, Domke on Commercial Arbitration 100 (1968). Only when the agreement is ambiguous as to the scope of arbitrability must the question of arbitrability be resolved, at least initially, by an arbitrator. *See Butler Products Company v. Unistrut Corporation,* 367 F2d 733 (7th Cir 1966); *Morris v. Zuckerman,* 72 Cal Rptr 880, 446 P2d 1000 (1968); *Layne-Minnesota Co. v. Regents of the University,* 266 Minn 284, 123 NW2d 371 (1963); M. Pirsig, Arbitrability and the Uniform Act, 19 Arbitration J 154 (1964).

■ As the scope of the grievance procedures in the agreement is clear from the face of the agreement, and since a remand in this case would serve only to compel ERB to determine that scope—a function not peculiar to ERB's expertise—it is appropriate for this court to interpret the agreement. The essence of PAT's complaint was that the District was not complying with Oregon Administrative Rule 581-22-055(3)(a). The only provision in the agreement which even arguably could be interpreted as binding the District to comply with the state administrative rule is Article 6, § 1(2), which provides:

> "A 'grievance' shall mean a contention by an employee or group of employees that the aggrieved has been treated inequitably by a violation, misinterpretation, or inappropriate application of School District policies (including this Agreement) and/or administrative rules and regulations."

We find that the only rational interpretation of this provision is that by it the District agreed to process as grievances matters involving noncompliance with its *own* policies and administrative rules and regulations. It does not mean that the District agreed to make compliance with *state* administrative rules a grievable matter. This conclusion is reinforced by a reading of Article 6, § 1(2)(d), of the agreement which excludes from the definition of a grievance:

> "Any attempt to change this Agreement or written District policies or administrative rules and regulations, provided such policies, rules or regulations are not inconsistent with this Agreement."

Section 1(2)(d) would have little meaning if "administrative rules and regulations" meant state rules and regulations.

■ As noted at the outset, PAT's complaint also alleged that Article 3, § B, of the agreement was violated by the District. Article 3, § B, provides:

> "Except as otherwise provided in the above cited provisions of this Agreement and subject to all other express terms of this Agreement, the Board and its

designees shall retain control and direction over all such areas of discretion or policy as the functions and programs of the District, its standards of services and education, its overall budget, utilization of technology, its organizational structure, the selection and direction of its personnel, the use of its facilities, and all matters of inherent managerial policy delegated to the Board under the laws of the State of Oregon. This Section B relates to the performance of managerial responsibilities during the term of this Agreement and is not intended to bar the Association from making collective bargaining proposals during the negotiations process for the ensuing year of years."

We find nothing in Article 3, § B, which would make the District's noncompliance with state administrative rules a grievable matter.

Since no provision in the agreement required the District to process PAT's complaint as a grievance, ERB's order adjudging the District guilty of an unfair labor practice was in error.

Reversed.