CORVALLIS SCHOOL DISTRICT 509J, *Petitioner,*
*v.*
CORVALLIS EDUCATION ASSOCIATION et al,
*Respondents.*
(No. C-9-77, CA 10065)
581 P2d 972

James Eickelberg, Corvallis, argued the cause and filed the brief for petitioner.

Henry H. Drummonds, Eugene, argued the cause for respondents. With him on the brief were John T. Kehoe, and Kulongoski, Heid, Durham & Drummonds, Eugene.

James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem, waived appearance for respondent Employment Relations Board.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

JOHNSON, J.

## JOHNSON, J.

Petitioner, Corvallis School District 509J (the District), appeals from the Employment Relations Board's (ERB) decision that it committed an unfair labor practice under ORS 243.672(1)(g)[1] by refusing to comply with the award of the arbitrator in a grievance proceeding arising under the collective bargaining agreement between the District and the Corvallis Education Association (CEA).

The arbitrator found that nonrenewal of a probationary teacher's contract violated the collective bargaining agreement and ordered reinstatement and back pay. The collective bargaining agreement provides for a four level grievance procedure, the pertinent provisions of which are as follows:

"Article X
"Grievances
"* * * * *

"*Section A—Definitions*

"1. 'Grievance' means a complaint by a teacher or group of teachers that there has been to the aggrieved a violation of public school laws, the policies of the District, or the administrative rules and regulations designed to implement said policies.
"* * * * *

"9. 'Binding Arbitration' is a decision by a committee of arbiters or by a single arbiter which requires compliance by both parties in interest.
"* * * * *

"*Level Three*

"A three-member advisory arbitration committee shall be composed of one person appointed by the

---

[1] ORS 243.672(1)(g) provides:

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:
"* * * * *

"(g) Violate the provisions of any written contract with respect to employment relations including an agreement to arbitrate or to accept the terms of an arbitration award, where previously the parties have agreed to accept such awards as final and binding upon them."

aggriever, one person appointed by the aggrieved, and one person appointed by the two members already appointed.

"Within ten (10) days of the receipt of the appeal, the committee shall investigate all decisions and reasons therefore and all other data deemed necessary by the committee, and a written advisory recommendation will be presented to the Superintendent and the aggrieved containing the reasons therefor. * * *

"Within five (5) days the Superintendent will review the recommendation of the committee and render a written decision to the aggrieved.

### "*Level Four*

"Only the Superintendent or the Association may carry the grievance procedure to level four.

"* * * The decision of the arbiter shall be binding on both parties.

"*The arbiter's authority shall be limited to determining whether or not there has been a violation of the law, policy, rule, or regulation in question.*" (Emphasis supplied.)

The contract also contains a no strike clause and a provision reserving to the District authority over all matters "except as clearly and expressly limited by law and by the provisions of this agreement."

Petitioner's position advanced both in the arbitration proceeding and before ERB was that under the italicized language the arbitrator's authority was limited to determining whether there was a "violation of the law, policy, rule, or regulation in question" and that he did not have authority to make an award of reinstatement and back pay. There is some authority in other jurisdictions for construing arbitration clauses and collective bargaining contracts in much the same manner as commercial contracts are construed. *See International Association of Machinists v. Cutler-Hammer,* 271 App Div 917, 67 NY Supp 2d 317 *aff'd* 297 NY 519, 74 NE 2d 464 (1947). We reject that view because it ignores the context of the collective bargaining relationship and is inconsistent with the

policies embodied in the collective bargaining statutes. *See* ORS 243.650 to 243.782, ORS ch 663. We adopt the view expressed by the United States Supreme Court in the trilogy of Steelworkers cases: *Steelworkers v. American Mfg. Co.,* 363 US 564, 80 S Ct 1343, 80 S Ct 1363, 4 L Ed 2d 1403, 4 L Ed 2d 1432 (1960); *Steelworkers v. Warrior & Gulf Co.,* 363 US 574, 80 S Ct 1347, 4 L Ed 2d 1409 (1960); *Steelworkers v. Enterprise Corp.,* 363 US 593, 80 S Ct 1358, 4 L Ed 2d 1424 (1960). In *Steelworkers v. Warrior & Gulf Co., supra,* the Supreme Court stated:

> "* * * An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." 363 US at 582-83.

■ In *Steelworkers v. Enterprise Corp., supra,* the Supreme Court held that although a collective bargaining contract may not expressly provide for a remedy, the arbitrator nevertheless may fashion a remedy if he interprets the contract to give him that authority. The court stated:

> "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency." 363 US at 597.

The Supreme Court elaborated on the rationale for these rules in *Steelworkers v. American Mfg. Co., supra,* which like *Warrior* and *Enterprise,* was a suit by a union to compel arbitration of a grievance. The lower courts held that the subject dispute was not arbitrable and the Supreme Court reversed, stating:

> "* * * The lower courts in the instant case had a like preoccupation with ordinary contract law. The collective agreement requires arbitration of claims that courts

might be unwilling to entertain. In the context of the plant or industry the grievance may assume proportions of which judges are ignorant. Yet, the agreement is to submit all grievances to arbitration, not merely those that a court may deem to be meritorious. There is no exception in the 'no strike' clause and none therefore should be read into the grievance clause, since one is the *quid pro quo* for the other. The question is not whether in the mind of the court there is equity in the claim. Arbitration is a stabilizing influence only as it serves as a vehicle for handling any and all disputes that arise under the agreement.

"* * * In our role of developing a meaningful body of law to govern the interpretation and enforcement of collective bargaining agreements, we think special heed should be given to the context in which collective bargaining agreements are negotiated and the purpose which they are intended to serve. * * *

"* * * * *

"* * * When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function under which that regime is entrusted to the arbitration tribunal." 363 US at 567-69. (Footnote omitted.)

■ The agreement here provides for "binding" arbitration of grievances and the authority of the arbitrator is limited to "determining whether or not there has been a violation of the law, policy, rule, or regulation in question." Viewed from petitioner school district's perspective, the phrase is at best ambiguous and thus the presumption stated in the *Steelworkers* cases that the arbitrator is empowered to interpret the contract and fashion remedies applies. The limitation clause is merely a restatement of the definition of "grievance" contained in Article X, Section A(1) of the agreement. The reference to "policy, rule, or regulation" refers to those policies, rules or regulations incorporated in the collective bargaining agreement. Section A of the agreement provides:

"* * * This document represents the full agreement between the parties and shall modify, replace, or add to

any policies, rules, regulations, procedures, or practices of the District which are contrary to these terms. * * *"

The arbitrator construed the limitation to mean no more than the standard limitation on arbitration contained in most collective bargaining agreements, *i.e.,* that arbitrators are to base their decisions upon the agreement, and not substitute their judgment for that of the parties with respect to matters that are specifically expressed. He concluded that the limitation clause did not restrict his implied power to fashion remedies. His interpretation is reenforced by the definition in the contract of "binding arbitration" as a decision "which requires compliance by both parties in interest." The term "compliance" implies there must be an award with which the parties must comply. We cannot say with "positive assurance that the arbitration clause is not susceptible of * * * [the] interpretation" which the arbitrator placed upon it, and therefore his decision is final. *Steelworkers v. Warrior & Gulf Co., supra,* 363 US 564 at 583. ERB's decision that petitioner's refusal to comply with the arbitrator's award was an unfair labor practice under ORS 243.672(1)(g) was correct as a matter of law.

Affirmed.