Argued December 15, 1978, reversed May 14, 1979

OSTRER, *Respondent,*
*v.*
PINE-EAGLE SCHOOL DISTRICT
NO. 61, *Petitioner.*
(ERB No. C-34-78, CA 12122)
594 P2d 1296

David C. Silven, Baker, argued the cause for petitioner. With him on the brief was Silven and Young, Baker.

Liana Colombo, Eugene, argued the cause for respondent. With her on the brief was Kulongoski, Heid, Durham & Drummonds, Eugene.

Before Schwab, Chief Judge, Thornton, Tanzer and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

Petitioner Pine-Eagle School District No. 60 (District) seeks judicial review of an Employment Relations Board (ERB) order holding it guilty of an unfair labor practice, and directing the District to proceed to binding arbitration "as provided in the collective bargaining contract" to which the District was a party.

Mr. Ostrer, the complainant before ERB, was a probationary teacher employed by the District. On December 2, 1977, he met with the principal of his school and the District Superintendent to discuss complaints received about his teaching practices, at which meeting the Superintendent suspended Mr. Ostrer pending a meeting of the District School Board on December 12, 1977, when the matter was to be considered. At that time, with Mr. Ostrer and his attorney present, the District school board met in executive session to consider the suspension, and voted to dismiss him effective December 13. Mr. Ostrer demanded and, on January 26, 1978, received, an evidentiary hearing before the school board in accordance with ORS 342.835(1).[1] After hearing the evidence, the board affirmed its earlier dismissal action; no appeal was taken.[2]

---

[1] ORS 342.835(1) provides:

"(1) The district board of any fair dismissal district may discharge or remove any probationary teacher in the employ of the district at any time during a probationary period for any cause deemed in good faith sufficient by the board. The probationary teacher shall be given a written copy of the reasons for his dismissal, and upon request shall be provided a hearing thereon by the board, at which time he shall have the opportunity to be heard in his own defense either in person or by a representative of his choice."

In the context of this section, it might be questioned whether the discharge of a probationary teacher "for any cause deemed in good faith sufficient by the board" would ever be considered disciplinary.

[2] ORS 342.835(3) provides for a limited appeal of a discharge or nonrenewal of a probationary teacher:

"(3) If an appeal is taken from any hearing, the appeal shall be limited to:

"(a) The procedures at the hearing;

In the meantime, Mr. Ostrer filed a grievance under the collective bargaining agreement with his principal and the superintendent, which the District refused to process as a grievance.[3] His demand for binding arbitration of his grievance, the third and final step in the contractual grievance procedure sought to be invoked, was refused by the District on January 24, 1978. Thereafter, he filed an unfair labor practice complaint against the District with ERB. After a hearing, ERB concluded that the provisions of the agreement were ambiguous as they apply to the scope of arbitrability of the discharge in this case and that the District's refusal to arbitrate the grievance constituted an unfair labor practice within the meaning of ORS 243.672(1)(g).[4] The District was ordered to proceed with arbitration, apparently to determine initially whether the question is arbitrable. *See Portland Teachers v. School Dist.*, 27 Or App 247, 555 P2d 943 (1976).

An underlying question is whether a school board, an elected public body, charged by statute with the responsibility for educating children residing in its district (ORS 332.072), may be required to submit to binding arbitration its dismissal of a probationary teacher where the collective bargaining agreement

---

"(b) Whether the written copy of reasons for dismissal required by this section was supplied; and

"(c) In the case of nonrenewal whether notice of nonrenewal was timely given."

[3] Among the reasons stated for denying the grievance was that the grievance procedure was not applicable.

[4] ORS 243.672(1)(g) provides:

"(1) It is an unfair labor practice for a public employer or its designated representative to do any of the following:
"* * * * *
"(g) Violate the provisions of any written contract with respect to employment relations including an agreement to arbitrate or to accept the terms of an arbitration award, where previously the parties have agreed to accept such awards as final and binding upon them.
"* * * * *."

with the bargaining representative of the teachers does not clearly and expressly provide therefor. A school board has statutory duties to its electorate; an incident of those duties applicable here is to discharge, or not renew contracts of, probationary teachers whom the board determines in good faith ought not be retained. If the board fails to perform its duty effectively in this respect, the probationary teacher achieves the status of a permanent ("tenured") teacher after three years, after which he or she may be discharged only for certain statutory reasons (ORS 342.865) under carefully circumscribed procedures. (ORS 342.895-342.915.) The statutory scheme would then malfunction.

■ Assuming, arguendo, that the school board may delegate its duty with respect to the discharge of probationary teachers to some unknown third party, or to limit its statutory authority with respect to such discharges,[5] at the least the agreement with respect to that delegation or limitation must be clear and specific, and will not be implied. Our holding in *Corvallis Sch. Dist. v. Corvallis Education Assn.*, 35 Or App 531, 581 P2d 972 (1978),[6] is not inconsistent with the foregoing proposition. The agreement in that case clearly required arbitration, and the district submitted the dispute pursuant to its provisions. The only question presented on appeal was whether the arbitrator, having found the discharge to be in "violation of the law, policy, rule or regulation," (the contractual lan-

---

[5] Whether a school district may agree to refer teacher dismissal or contract renewal matters to binding arbitration is not presented here, nor has that question been decided. In *Central Point Sch. Dist. v. ERB*, 27 Or App 285, 555 P2d 1269 (1976), *rev den* (1977), we held that teacher evaluation *procedures* could be covered by a collective bargaining agreement, and the question as to whether those procedures were followed could be the subject of binding arbitration.

[6] In the *Corvallis Sch. Dist.* case we quoted, by way of *dicta*, from *Steelworkers v. Warrior & Gulf Co.*, 363 US 574, 80 S Ct 1347, 4 L Ed 2d 1409 (1960), language to the effect that doubts are resolved in favor of arbitrability in commercial collective agreements.

guage) had authority to order reinstatement with back pay. We held that the formulation of an appropriate remedy was within the authority of the arbitrator. It is apparent that without that authority, all the arbitrator could do was declare that the discharge was unlawful.

Unlike the *Corvallis School Dist.* case, the agreement here does not clearly provide that teacher dismissals are subject to the grievance procedure ending in arbitration. Article 3 of the agreement is a broad management rights clause, which states:

"It is jointly recognized and agreed that the parties to this Agreement share a common goal in the educational process to provide a superior educational program within the framework of the limits of available resources. Teaching personnel covered by this Agreement have a continuing, professional commitment to the education process, to young people, to their colleagues, and to the improvement of their own skills. The Board consists of citizens who are elected by and directly responsible to the community for the total education program. The Board acts by and through its administrative and supervisory staff. The parties, therefore, jointly recognize that pursuant to ORS 332.072 - ORS 332.075 and ORS 332.105 - 332.107 the Board has the responsibility for formulation of and implementation of policies and rules governing the educational program and services of the District. No delegation of such responsibility is intended or to be implied by any provisions of this Agreement.

"Recognizing the relationship noted in Section 1 of this Article, the parties agree that the District retains all the customary, usual, and exclusive rights, decision-making, prerogatives, functions, and authority connected with or in any way incident to its responsibility to manage the affairs of the District or any part of it, consistent with ORS 243.711 to 243.795. Rights of employes in the bargaining unit and the Association are limited to those set forth in this Agreement or provided by Oregon statute, and the District retains all prerogatives, functions, and

rights not limited by the terms of this agreement or by Oregon statute."[7]

Article 5 covers the rights of professional employes and states in section B:

"B. Rules and regulations governing teacher conduct shall be reasonable, and enforcement of teacher discipline shall be fair and exercised for just cause."

In addition to the contract provisions, the District has written personnel policies which govern the terms and conditions of employment of teachers. Personnel Policy No. 421 includes the following provision:

"Provisions provided by statute shall be used in [teacher] dismissal procedures."

Two different grievance procedures are provided in the agreement. For grievances involving an alleged violation or misapplication of a provision of the agreement, Article 6 of the agreement sets forth a three-step grievance procedure culminating in binding arbitration, and is the one sought to be enforced here.[8] The issue must involve the interpretation of a specific provision of the agreement. The agreement goes on to provide that:

"* * * The arbitrator shall have no power to * * * add to, subtract from, modify or amend any terms of this Agreement. The arbitrator shall have no power to substitute his discretion for that of the Board in any manner nor [sic] specifically contracted away by the Board. * * *"

■ We conclude that the provisions of the Agreement, taken as a whole, do not limit the board's rights with respect to the dismissal of teachers. ERB concluded that the phrase "teacher discipline" in Article 5

---

[7] ORS 243.711 - 243.795 is now 243.650—243.782, and is the Collective Bargaining Act.

[8] For those grievances involving an alleged violation of a specific District personnel policy not governed by a provision of the agreement, the grievance procedure contained in Personnel Policy No. 417 applies. It culminates in a decision by the school board.

(quoted above) includes dismissals. We note, however, that while neither the word "dismissal" nor the word "discharge" is used in Article 5, the word "discharge" *is* used, in addition to "discipline" in Article 7, with respect to employees who violate that article. Further, the District's personnel policies specifically cover dismissal and provide that the statutory procedures are to be followed. It appears that both parties considered the words to have different meanings.

■ We hold that where, as here, the collective agreement does not clearly and specifically limit the authority and duty of the school board to discharge probationary teachers, the agreement on its face does not encompass within its grievance procedures the arbitrability of such discharges. The scope of arbitrability becomes a question for the court. *Portland Teachers v. School Dist., supra.*

Because no provision of the agreement required the District to process the asserted grievance, it follows that ERB's order adjudging the District guilty of an unfair labor practice and directing it to proceed with arbitration was in error.

Reversed.

**SCHWAB, C. J.,** specially concurring.

I agree with the result but not the reasoning of the majority opinion.

Generally speaking, when a labor contract is ambiguous as to the scope of arbitrability, the decision on that issue is for the arbitrator. *Portland Teachers v. School Dist.,* 27 Or App 247, 555 P2d 943 (1976). As the majority agrees, when the contract is clear on its face as to what issues are arbitrable, the determination of arbitrability is for the court—not an arbitrator. Here

the grievance procedures in the contract which culminate in binding arbitration clearly cover discipline. They equally clearly do not cover dismissal.

Tanzer, J., joins in this specially concurring opinion.