Argued and submitted June 15, affirmed October 12, 1981

## NORTH CLACKAMAS SCHOOL DISTRICT NO. 12,
*Petitioner,*

*v.*

## NORTH CLACKAMAS EDUCATION ASSOCIATION,
*Respondent.*

(C 275-79, CA 19599)

634 P2d 1348

Bruce Bischof, Sunriver, Oregon, argued the cause and filed the brief for petitioner.

Henry H. Drummonds, Eugene, argued the cause for respondent. With him on the brief was Kulongoski, Heid, Durham & Drummonds, Eugene.

Clifford N. Carlsen, Jr., James N. Westwood, Miller, Nash, Yerke, Wiener & Hager, Portland, filed a brief amicus curiae for Washington County School District No. 48.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner North Clackamas School District No. 12 (District) seeks judicial review of an Employment Relations Board (ERB) order finding petitioner guilty of an unfair labor practice for refusing to accept the terms of an arbitration award. ORS 243.672(1)(g).[1] ERB ordered the District to comply with an arbitrator's order to reinstate a probationary teacher. On appeal, the District contends, among other things, that the arbitrator did not have authority under the terms of the collective bargaining agreement to order the teacher's reinstatement. We conclude that the order of reinstatement was within the arbitrator's power, and we therefore affirm.

### PARTIES

Respondent here, and the complainant before ERB, is the North Clackamas Education Association (Association). The teacher whose interests are represented by the Association is Roberta Yambasu, who was a probationary teacher employed by the District for the school years 1976-77, 1977-78, and 1978-79. On February 27, 1979, the District's Board informed her that her contract would not be renewed for the next school year.[2] After receiving notice of the nonrenewal, she filed a grievance, alleging that her nonrenewal resulted from violations of the collective bargaining agreement, unjust and arbitrary evaluations by her supervisor, and inequitable applications of the District's written evaluation policies and standard practices. The Association, on her behalf, sought her reinstatement as a regularly employed teacher and restoration of all back pay, benefits and rights.

---

[1] ORS 243.672(1)(g) provides:

"(1) It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(g) Violate the provisions of any written contract with respect to employment relations including an agreement to arbitrate or to accept the terms of an arbitration award, where previously the parties have agreed to accept such awards as final and binding upon them."

[2] By not renewing Yambasu's contract for a fourth year, the District, in effect, denied her permanent status as a teacher. *See* ORS 342.815(4).

The parties were unable to resolve the grievance at the administration level, and it went to arbitration. Two issues were presented to the arbitrator for his decision: (1) whether the District's evaluations, and thus its decision of nonrenewal, was arbitrable; (2) whether the policies in question were part of the collective bargaining agreement and, if so, whether the District had followed them. The arbitrator found for the Association on both points and ordered Yambasu's reinstatment in a position as a third year probationary teacher.[3]

## FACTS

We quote the relevant facts found by the arbitrator from the decision of ERB.[4]

"Mrs. Yambasu taught at the high school level, and spent 60 percent (60%) of her time teaching math and 40 percent (40%) of her time teaching English. Her supervisor at all material times was Mr. Bob Smith. Evaluations given Mrs. Yambasu in the 1976-77 and 1977-78 years were, for the most part, very positive. At the beginning of the 1978-79 school year, Mrs. Yambasu's official statement of goals for that year was approved by Mr. Smith, as written. Mr. Smith did not discuss the goals with her. Also, at the beginning of this year, Mrs. Yambasu was selected chairperson of the Math Department by her colleagues. She agreed to serve in that position over the displeasure of Mr. Smith, which was first expressed in mid-October 1978. In November 1978, Mr. Smith began dropping in to observe Mrs. Yambasu's math classes. On November 22, 1978, he sent her a memorandum expressing concern over an 'absence of a systematic perception check' of student understanding of new math concepts and over a deficiency in class control. These concerns were stated again in a 'plan of assistance' Mr. Smith sent to Mrs. Yambasu on December 1, 1978. Soon thereafter, Mr. Smith responded to Mrs. Yambasu's request for clarification of the criticism by making some suggestions for improvement of her classroom work.

---

[3] The arbitrator also ordered that the reinstatement be to a non-split teaching assignment and that Yambasu not be put in a position where she would again be evaluated by Mr. Smith, her previous evaluator. The Association did not seek to enforce these provisions of the arbitrator's award.

[4] The case was submitted to the Board on stipulated facts. The Board did not make any findings on its own.

"Between December 6, 1978 and January 15, 1979, Mr. Smith made three more drop-in observations of Mrs. Yambasu's classes. There was no conference or discussion between Mrs. Yambasu and Mr. Smith after any of these unscheduled observations to review Mrs. Yambasu's progress of the plan of assistance. However, on January 22, 1979, Mr. Smith did inform Mrs. Yambasu that she was not meeting the plan of assistance. And on January 30, 1979, Mr. Smith sent Mrs. Yambasu a memo advising her that District evaluation procedures would no longer be used solely for improvement of her performance, but also for obtaining and recording of information as to the continuation of her employment. On February 13, 1979, Mr. Smith again visited Mrs. Yambasu's class and did not hold any pre- or post-observational conference. On February 15, 1979, Mr. Smith filed Mrs. Yambasu's performance evaluation which recommended that she be nonrenewed and stated * * * [that Ms. Yambasu is in the process of meeting her goals but not the three goals identified on Mr. Smith's Plan of Assistance.] On February 27, 1979, the District's Board, relying entirely on Mr. Smith's evaluation and recommendations, acted to nonrenew Mrs. Yambasu's contract. Also on February 27th, Mrs. Yambasu requested a supplemental evaluation. Mr. Smith did file a supplemental evaluation on April 2, 1979, which continued to recommend that Mrs. Yambasu's contract not be renewed."

On the basis of this evidence, the arbitrator made findings of fact summarized by ERB as follows:

"In support of his conclusion that Mr. Smith acted in an arbitrary fashion, the Arbitrator noted that the grievant was not considered to be a marginal teacher during her first two years of District employment; that Mr. Smith had failed to consult with Mrs. Yambasu in regard to setting her teaching goals; that the goals which were set by Mrs. Yambasu and approved by Mr. Smith were not used as the basis for later evaluations; that Mr. Smith admitted that Mrs. Yambasu was meeting the goals she had set; that Mr. Smith failed to make any deficiencies noted in Mrs. Yambasu's second year performance a part of her goals for her third teaching year; that Mr. Smith failed to make 'formal' observations of Mrs. Yambasu; that Mr. Smith failed to give Mrs. Yambasu 'feedback' after each evaluation; that, in fact, Mr. Smith was more interested in building a case against Mrs. Yambasu than with providing her with the feedback necessary for her to improve; that Mr. Smith failed to take into account the variety and grade level of

students in Mrs. Yambasu's math classes in conducting her evaluations; that Mr. Smith did not observe any of Mrs. Yambasu's English classes until after he had decided to consider her for nonrenewal; that the plan of assistance given Mrs. Yambasu was not developed cooperatively and was unclear; that Mrs. Yambasu had been given no notice that the District's Board would nonrenew her as early in the year as it did; and that the record did not indicate the criteria used or the length of the observation relied on by Mr. Smith in his preparation of Mrs. Yambasu's second evaluation."

## DECISION FOR REVIEW

The arbitrator concluded that, in performing the third year evaluation and in reaching the decision not to renew Yambasu's contract, the District, through Mr. Smith, acted in an arbitrary manner and, in so doing, violated the express terms of Article VI, Section 6.1 (the just cause provision) of the collective bargaining agreement,[5] violated Board Policy 4118 and Appendix C of the Contract (both relating to teacher evaluation)[6] and violated the

---

[5] Article VI, Section 6.1 of the collective bargaining agreement provides:

*"6.1 Just Cause Provision*

"No member of the bargaining unit shall be arbitrarily disciplined, reprimanded, reduced in rank or compensation, or deprived of any professional advantage. Such actions shall be based on information that has been reported to the employee and can be substantiated. All information forming the basis for disciplinary action will be made available to the professional employees and to the Association at the employee's request. If a teacher is suspended prior to expiration of contract, he shall receive his salary for the first five (5) days of the suspension period."                    .

[6] Article VII provides, in relevant part:

*"TEACHER EVALUATION*

"7.1 The performance of all teachers shall be evaluated in writing by a trained evaluator. Probationary teachers shall be evaluated at least once during the school year no later than February 15. In the event that a 'shall not recommend reelection' evaluation is received on the February 15 evaluation, the teacher may request and have conducted an additional evalution. Tenure teachers shall be evaluated at least once every year and the evaluation report should be submitted by the end of the year of evaluation. Criteria for evaluation of all teachers shall be clearly defined.

"7.2 In cases where change of assignment involving loss of pay or other demotion is based upon evaluation, more than one written evaluation shall be made and they shall be conducted at the earliest possible dates (see Appendix C Withholding Increment and 10.5).

"7.3 A copy of the written evaluation shall be submitted to the teacher at the time of personal conference or within ten (10) days after the conference. One copy is to be signed and returned to the administration immediately. The

other is to be retained by the teacher. In the event that the teacher feels that his evaluation was incomplete or unjust, he may put his objections in writing and have them attached to the evaluation report to be placed in his personnel file with a copy to the Superintendent. In the event the teacher desires to have further relief from such report, he shall utilize the grievance procedure within ten (10) days after receipt of such report.

"7.4 Also refer to Appendix C of this Agreement."

Appendix C provides:

### "APPENDIX C - WITHHOLDING INCREMENT

#### "Remediation During the Normal Evaluation Process

"As part of regular evaluation program, principal enters into advising individual teacher. He prescribes needed remedial processes. If first remediation process proves unsuccessful, principal has alternate plans for recycling teacher through other approaches to problem. Through a variety of approaches, principal will normally achieve needed improvement in performance. Principal shall have documented his procedure: diagnosis, processes prescribed and length of time allotted for each remediation process; and shall have secured teacher's signature at each interview, with teacher having had opportunity to add comments at each interview.

#### "Determination of Continuing Deficiency

"After normal evaluation procedure has been completed (including actual classroom observations and two or more remediation processes have been used and a minimum of nine (9) weeks has been allotted for prescribed improvement), if principal determines that a serious deficiency in teaching or management of students still exists, he may then proceed to steps specified in Increment Withholding Procedures.

#### "Increment Withholding Procedures

"1. Principal shall specify, in writing, details of deficiency in performance which still exists. He shall also specify remediation processes prescribed, time allotments for each, specific action he has taken to facilitate remediation, and dates of interviews on the subject.

"Teacher shall be given this written notification which shall include notice of impending placement in the Increment Withholding Category within six (6) weeks, unless sufficient improvement has taken place in that length of time.

"2. In every case, before a marginal teacher is placed in Increment Withholding Category, two follow-up evaluations by different evaluators shall be conducted within next thirty (30) days. Two of three evaluators must agree with Increment Withholding Classification before vertical increment can be withheld.

"3. Increment Withholding Procedures may be invoked against a teacher only after determining that such teacher is not working under any of the following conditions.

"A. Class size over maximum as indicated in negotiations agreement, with or without teacher having signed waiver.

"B. Teaching load above maximum conditions indicated in agreement with or without teacher having signed waiver.

"C. Lack of aide time available on some type of regular basis.

"D. Lack of assistance from district specialists for severe student problems.

"E. Lack of teaching materials equivalent to those provided other teachers in building.

"Temporary extenuating conditions should also be considered.

"4. During time that any teacher is listed in Increment Withholding Category, that teacher may not:

"A. Be considered for any kind of advancement in the district

"B. Be accepted as a member of a cirriculum committee or other district-wide decision making committee

"C. Receive an annual increment.

"During this time said teacher must continue to be free from any of conditions listed under Increment Withholding Procedures, Paragraph 2, Items A through E.

"5. There is no minimum length of time in this category. A teacher may be evaluated at any time as improved or may be recommended for nonrenewal by principal if unsatisfactory progress is made after a planned program for instructional improvement has been completed. The category is an intermediate step pending reevaluation.

"A teacher placed in Increment Withholding Category may remain in this category no longer than until end of following teaching year, at which time he shall be evaluated as improved and restored to regular status, or he shall be recommended for non-renewal or dismissal.

"Total number of teachers in Increment Withholding Category shall not exceed three percent (3%) of teachers in bargaining unit.

"Funds saved through withholding of increment shall be placed in an instrumental improvement fund to be used by teachers upon application to Educational Program Committee. Teachers in Increment Withholding Category would be given priority in allocation of these funds. (Also see Sec. 7.3 ·Teacher Evaluation."

Board Policy 4118 provides:

"4118. *Evaluation*

"All certificated employees shall be evaluated at least once a year (ORS 342.850). The primary purpose of evaluation is to provide a basis for improvement in professional competence, thus improving the instructional program of the district. In addition, evaluation serves to recognize exemplary skills demonstrated by employees and to provide information upon which to base:

"A. Assignments

"B. Validation of the selection process

"C. Re-employment, promotion, or dismissal

"The evaluation criteria and instruments used to evaluate personnel shall be based on the goals and objectives adopted by the Board of Directors for the school district.

"The performance of all teachers shall be evaluated in writing by a trained evaluator. The evaluator shall be comprehensive in his evaluation of

Teacher Evaluation Guidelines.[7] These provisions are set out in the margin.

employees, taking into account personal, interpersonal, technical, and conceptual skills. It is the responsibility of the evaluator not only to assess the effectiveness of the employees' work, but to offer clear and sound suggestions and techniques that will improve effectiveness and remediate observed deficiencies. The evaluation instrument used shall be that approved by the State.

"4118.1 *Report of Probationary Teachers*

"Probationary teachers shall be evaluated at least once during the school year no later than February 15.

"The evaluation conference with the teacher shall be summarized by the evaluator, recorded on appropriate forms, signed by both parties, and filed. One copy shall be retained by th employee, one copy shall be retained by the evaluator, and the original copy shall become part of the permanent records in the District Office. New teachers shall be provided with professional help. This assistance shall be the result of a planned program with the teacher in question. All probationary teachers are expected to make full use of the offered assistance and ask for help when it is needed. Teachers who show inability to render the quality of service commensurate with the standard desired for the system shall not be recommended for a renewal of their contract.

"In the event that a 'shall not recommend re-election' evaluation is received, the teacher may request and have conducted an additional evaluation.

"4118.1.1 *Non-Renewal of Probationary Teachers Contract*

"If the contract of a probationary teacher is not to be renewed for the following year, that teacher shall be officially notified in writing of the intent to non-renew including reasons for such action, on or before March 15. The teacher shall be entitled to a review before the Board of education if requested in writing within ten (10) days after receipt of non-renewal notice. The hearing shall be conducted within thirty (30) days after receipt of the teacher's written request. The reasons for non-renewal of contract shall provide the basis for the hearing.

"The hearing shall be held during an executive session of the Board unless the teacher requests a public hearing.

"The teacher shall have the right to:

"(a) Be informed of the evidence against him/her

"(b) Be heard, call witnesses and give evidence

"(c) Confront and cross examine witnesses

"(d) Be represented by an attorney or a representative of his/her choice.

"The Board of Directors shall communicate to the teacher and all other parties officially present at the hearing its written decision and the facts that are the basis for that decision.

"A record of the proceedings including the Board's decision, will be placed in the teacher's personnel file."

[7] The Teacher Evaluation Guidelines provide, in relevant part:

On review, ERB upheld the arbitrator's award on the basis of the District's violations of Board Policy 4118, Appendix C, and the Teacher Evaluation Guidelines. ERB noted that had the arbitrator based his award solely on interpretation of Article VI, Section 6.1, the just cause provision, he would have exceeded his authority under the collective bargaining agreement because that section did not clearly provide for arbitration of nonrenewal decisions or evaluation processes.

## ISSUES

On appeal, the District contends that the arbitrator exceeded his authority under the terms of the collective bargaining agreement in ordering the reinstatement of Yambasu as a probationary teacher.[8] The District argues that dismissal or nonrenewal of a probationary teacher is not subject to binding arbitration; rather, the subject is specifically excluded from arbitration. The District's argument can be read also as a claim that the *remedy* of reinstatement was beyond the arbitrator's authority, even if the matter was arbitrable. The District contends further that the Teacher Evaluation Guidelines that the arbitrator found were violated were part of neither the collective bargaining agreement nor printed and published District standards, but were instead merely task force recommendations that had not been formally adopted. Alternatively,

---

*"GOAL SETTING*

"The teacher and evaluator jointly discuss and set goals for the year based upon individual, building and district needs. Goals are to be written and should be in measurable terms with evaluation criteria outlined * * *.

*"DATA COLLECTING*

"Formal and informal observations and conferences will be made by the evaluator before the final evaluation is written. The frequency of observations will vary according to the needs of the individual teacher. Formal observations should include a complete supervisory cycle (preobservation conference, data collecting, and post-observation conference) that will focus on the objective analysis of the educational process in the classroom.

"* * * * *

"When the evaluator has identified areas of concern, a written plan of assistance will be cooperatively developed to resolve these identified problems."

[8] Petitioner's assignments of error are not clearly stated. However, we find that they are sufficienct to raise the issues discussed.

the District argues that there is no evidence that the District failed to comply with either Appendix C, Board Policy 4118.1, or the Teacher Evaluation Guidelines.

## ARBITRABILITY

■    We turn first to whether Yambasu's grievance was arbitrable. The collective bargaining agreement between the District and the Association provides in relevant part.

"4.3.4 *Level Four* (Arbitration)

"There may be differences of opinion as to the interpretation of either this Agreement or printed and published policies and standard practices of the Board. It is the desire of all parties to have these differences of opinion adjusted as quickly and efficiently as possible. To this end, the following rules concerning binding arbitration shall apply:

"A.    Binding arbitration shall be confined to:

"1.    Interpretation, meaning, or application of a specific term or provision of the collective bargaining agreement arrived at by the parties.

"2.    The question of whether the Administration follows the procedures for carrying out the Board policy that may be arrived at by the parties in collective bargaining.

"3.    The inequitable application of printed and published policies and standard practices.

"B.    *Both the content and management's judgment in matters of* changing job duties, vacancies and transfers, *teaching evaluations,* and complaint procedures are subject to the grievance procedure and may be subject to binding arbitration if the grievant claims that 1, 2, or 3 of paragraph A above was violated.

"* * * * *

"D.    * * * The arbitrator shall be without power or authority to make any decisions which require the commission of an act prohibited by law or which is in violation of this Agreement. The decision of the arbitrator shall be final and binding on the parties in interest unless he has exceeded his jurisdiction or in some other way acted improperly. In such cases, either the Association or the Board may seek remedy through the courts." (Emphasis supplied.)

Yambasu claimed that the evaluations conducted by her supervisor were unjust and arbitrary and inequitably applied the policies and standards of the District. In

contrast to the District's characterization of the issue, she did not challenge the *merits* of the nonrenewal decision. Her dismissal or nonrenewal was at issue only insofar as it *resulted from* the allegedly arbitrary evaluations. The arbitrator was asked only to examine the process of evaluating Yambasu's teaching performance. He was not asked whether, on the merits, she had performed satisfactorily. Such limited review of the District's action fell within the specific emphasized language of paragraph 4.3.4.B, *supra,* and was a proper subject for binding arbitration.

■     The District argues that it and the Association were not permitted to agree to arbitrate such matters. However, in *Central Point Sch. Dist. v. ERB,* 27 Or App 285, 291, 555 P2d 1269, *rev den* 277 Or 491 (1977), we held that "there is no constitutional or statutory proscription against agreements to arbitrate disputes over the application of agreed procedures relating to teacher renewal." There the subject of arbitration was teacher evaluations used in making renewal decisions. We noted that, although a school board has statutory authority not to renew a probationary teacher's contract, *see* ORS 342.835(2),[9] it is a "proper exercise of this authority for a district's board to agree to arbitrate disputes over teacher-evaluation procedures." 27 Or App at 290.

The District relies on our later decision in *Ostrer v. Pine-Eagle School Dist.,* 40 Or App 265, 594 P2d 1296 (1979), urging that it is contrary to *Central Point.* That reliance is misplaced. In *Ostrer* we held:

"Where * * * the collective agreement does not clearly and specifically limit the authority and duty of the school board to discharge probationary teachers, the agreement on its face does not encompass within its grievance procedures the arbitrability of such discharges." 40 Or App at 272.

---

[9] ORS 342.835(2) provides:

"(2) The district board may, for any cause it may deem in good faith sufficient, refuse to renew the contract of any probationary teacher. However, the teacher shall be entitled to notice of the intended action by April 1, and upon request shall be provided a hearing before the district board. Upon request from the probationary teacher the board shall provide th probationary teacher a written copy of the reasons for the nonrenewal, which shall provide the basis for the hearing."

*Ostrer* did not limit or affect in any manner our decision in *Central Point Sch. Dist. v. ERB, supra.* The two cases deal with different matters. The complainant in *Ostrer,* a probationary teacher, sought to submit to arbitration the district's decision to discharge him. The collective bargaining agreement did not provide for the arbitration of dismissal and nonrenewal decisions. We did question, but did not decide, whether the school district could ever delegate to a third party its power not to renew probationary teachers. *Ostrer v. Pine-Eagle School Dist., supra,* 40 Or App at 269. In *Central Point,* as in the case before us, the issue was whether *teacher evaluation procedures* could be covered by a collective bargaining agreement so that, if not followed, they could become the subject for binding arbitration. *See Ostrer v. Pine-Eagle School Dist., supra,* 40 Or App at 269, n 5. In a recent case, *Portland Assn. of Teachers v. School Dist. No. 1,* 51 Or App 321, 625 P2d 1336 (1980), where the teacher evaluation procedures used were challenged as arbitrary and in violation of the collective bargaining agreement, we reaffirmed our holding in *Central Point.*

■ In this case, the collective bargaining agreement provides that inequitably applied teacher evaluation policies and practices are subject to binding arbitration. As we held in *Central Point Sch. Dist. v. ERB, supra,* this does not interfere with the District's right and duty to make nonrenewal decisions. If Yambasu had filed a grievance challenging the *merits* of the District's nonrenewal decision, her grievance would not have been subject to binding arbitration, because the collective bargaining agreement does not clearly and specifically provide for the arbitration of discharge or nonrenewal decisions.[10] *Ostrer v. Pine-Eagle School Dist., supra.* That, however, was not her grievance.

## REMEDY

■ We turn now to Yambasu's reinstatement. The arbitrator ordered the District to reinstate her for another year as a probationary teacher. He called it a "third probationary year." The District argues that, because this year of

---

[10] ERB correctly found that the arbitrator's order could not be based on the "just cause" provisions of the collective bargaining agreement, *see* n 5, *supra,* given this court's decision in *Ostrer v. Pine-Eagle School Dist., supra.* Respondent Association does not rely on that provision; we therefore consider only the teacher evaluation provisions in determining whether the arbitrator's order was proper.

service will, in fact, be Yambasu's *fourth* year, the arbitrator's order amounts to an award of permanent tenure.

ORS 342.815(4) provides, in pertinent part:

" 'Permanent teacher' means any teacher who has been regularly employed by a fair dismissal district for a period of not less than three successive years, * * * *and who has been re-elected by such district after the completion of such three year period for the next succeeding school year."* (Emphasis supplied.)

Under the statutory scheme, the school board has the duty to decide which teachers will become permanent. *See* ORS 342.835(2). We have said:

"A school board has statutory duties to its electorate; an incident of those duties applicable here is to discharge, or not renew contracts of, probationary teachers whom the board determines in good faith ought not be retained. If the board fails to perform its duty effectively in this respect, the probationary teacher achieves the status of a permanent ('tenured') teacher after three years, after which he or she may be discharged only for certain statutory reasons (ORS 342.865) under carefully circumscribed procedures (ORS 342.895-342.915). The statutory scheme would then malfunction." *Ostrer v. Pine-Eagle School Dist., supra,* 40 Or App at 269.

For those reasons we questioned, as noted previously, whether a school board, as

"* * * an elected public body, charged by statute with the responsibility for educating children residing in its district * * *,"

may ever

"* * * delegate its duty with respect to the discharge of probationary teachers to some unknown third party, or to limit its statutory authority with respect to such discharges * * *." 40 Or App at 268-269.

In this case, the District did not delegate to an arbitrator its duty to make tenure decisions. Neither did the arbitrator purport to decide that Yambasu should receive permanent status. We now hold that the arbitrator's order cannot, in effect, confer tenure upon Yambasu. To allow the order to have such an effect would ignore the District's statutory duty to make nonrenewal decisions. It would mean that Yambasu would become a permanent

teacher without the District or anyone else deciding that she was competent to do so. Under ORS 342.815(4), only the district can confer tenure by an affirmative act of reelection. However, although we conclude that Yambasu cannot be reinstated as a *permanent* teacher, we nevertheless uphold the arbitrator's order.[11]

■■ Yambasu is entitled to a remedy, but only so much of a remedy as will restore her to the position she would have occupied had the District followed proper procedures. Had those procedures been followed, Yambasu may or may not have become tenured. Restoring her to a fourth probationary year puts both parties in the position they occupied when matters when awry, without doing violence to the District's ultimate duty to decide renewal questions. The order of reinstatement, inasmuch as it does not conflict with the District's statutory duty or authority, or with the collective bargaining agreement, was within the defined limits of the arbitrator's power. Once a violation of the collective bargaining agreement is established, the arbitrator has authority to formulate an appropriate remedy. *See Ostrer v. Pine-Eagle School Dist., supra,* 40 Or App at 270; *Corvallis Sch. Dist. v. Corvallis Education Assn.,* 35 Or App 531, 581 P2d 972 (1978).

## OTHER DISTRICT CONTENTIONS

■ The District also claims that the Teacher Evaluation Guidelines, Board Policy 4118 and Appendix C were not formally adopted District policies and practices (and therefore were not part of the collective bargaining agreement,[12]) and that the evidence introduced at the hearing supports their position. The record before us does not include a record of the hearing before the arbitrator. The only evidence before us is the collective bargaining agreement, the evaluations and policies noted above and the findings of fact made by the arbitrator, who determined that the

---

[11] We do not read the petitioner's position as including a claim that an additional probationary year would interfere with its statutory duty and authority. Respondent agreed at oral argument that she would not contend that the additional year would constitute granting tenure.

[12] *See* n 5, 6 and 7, *supra,* for the pertinent portions of the collective bargaining agreement, Appendix C, Board Policy 4118 and the Evaluation Guidelines.

challenged guidelines and policies were a District policy or standard within the meaning of the arbitration clause of the collective bargaining agreement. The limited record before us supports that determination. The collective bargaining agreement itself refers to Appendix C and states further that criteria for evaluation of teachers must be clearly defined. This also accomplished in Board Policy 4118 and the Evaluation Guidelines.[13] The record before us does not show that the arbitrator was wrong in concluding that the relationship of the Policy and the Evaluation Guidelines to the language of the agreement established that those items were District policies or standards.

■ The District's alternative contention is that there is no evidence that any of the policies and guidelines were violated. Again, we look to the arbitrator's findings and conclusions and the policies and guidelines themselves. The arbitrator concluded, among other things, that the District failed to use sufficiently various remedial processes to improve the deficiencies noted in Yambasu's teaching practices, that Mr. Smith's plan of assistance was not developed cooperatively with Yambasu and that the District did not comply with the provisions for formal observation and feedback. These conclusions are supported by the arbitrator's findings of fact. An examination of those conclusions, together with the standards or policies set out in the margin, *supra,* n 6, supports the arbitrator's determination that the District violated the standards and, hence, the collective bargaining agreement. We cannot substitute our judgment for the arbitrator's. *Willamina Ed. Assoc. v. Willamina Sch. Dist. 30 J,* 50 Or App 195, 623 P2d 658 (1981).

We conclude that whether the District complied with its standards and policies relating to teacher evaluation was a proper subject for binding arbitration. Having found that the District failed properly to apply these standards and policies to Yambasu, the arbitrator had authority to fashion an appropriate remedy. The order of reinstatement for another probationary year is appropriate and not

---

[13] *See* Article 7 of the collective bargaining agreement, n 5, *supra.*

in conflict with the law or the collective bargaining agreement. The decision of the ERB enforcing the arbitrator's order is affirmed.

Affirmed.