Argued and submitted February 11, affirmed May 11, 1983

BROWN, aka ARMSTEAD,
*Appellant,*

*v.*

SAFEWAY STORES, INC.,
*Respondent.*

(16-81-03894; CA A25576)

663 P2d 1271

Charles O. Porter, Eugene, argued the cause and filed the brief for appellant.

Don G. Carter, Portland, argued the cause for respondent. With him on the brief was McEwen, Newman, Hanna & Gisvold, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

In this labor dispute, plaintiff seeks reversal of a circuit court judgment dismissing her challenge to an arbitrator's award that (1) reinstated plaintiff in her job with defendant Safeway Stores, (2) declared the time between her discharge and her reinstatement to be a suspension period and (3) denied her back pay and benefits for the duration of the suspension. Plaintiff does not contest her reinstatement but she contends that the arbitrators lacked the authority to approve a suspension and to deny her back pay and benefits. We affirm the circuit court.

Plaintiff's employment as a clerk for defendant was governed by a collective bargaining agreement that permitted defendant to discharge employes for "just cause" and provided for arbitration of all discharge disputes. The present case arose after plaintiff received permission from defendant to attend her ex-husband's funeral in Los Angeles. When she failed to return to work at the time defendant has alleged that it expected her back, defendant discharged her. Through her union, plaintiff requested reinstatement, back pay and benefits. In the alternative, she sought arbitration under the terms of the collective bargaining agreement. The Joint Conference Board (Board) arbitrated the dispute and entered an award reducing plaintiff's discharge to a suspension but refusing her request for back pay and benefits. Plaintiff sought review of the Board's decision in circuit court, which held that

"* * * the arbitrators were within their power and authority in issuing the ruling they did and * * * the plaintiff is, therefore, bound by that ruling and, therefore, the plaintiff's suit should be dismissed * * *."

This appeal followed.

Plaintiff assigns as error

"* * * the circuit court's finding that the arbitrators were within their power in reducing plaintiff's discharge to suspension and denying her lost wages and benefits."

In support of this assignment, plaintiff argues that, because the existence of just cause to discharge was the only issue before the Board that had a basis in the express language of the collective bargaining agreement, the Board exceeded its authority by also deciding questions involving suspension,

back pay and benefits. She also contends that the Board lacked the power to rule on suspension, wages and benefits, because those questions were not included in the parties' submission to the Board.

Because the Board, as an arbitrator, derives its power solely from the terms of the collective bargaining agreement, the dispositive question in this case is whether that agreement empowered the Board to make the award made in this dispute. The pertinent provisions of the collective bargaining agreement are:

## "ARTICLE XV - DISCHARGE

"Section 15.01. The Employer shall be the judge as to the competency and qualification of his employees, and retains the right to discharge for just cause[.] * * * [A]ny disputes arising over the discharge of any employee shall be subject to the arbitration clause of this Agreement. * * *

"* * * * *

## "ARTICLE XXII - ARBITRATION

"Section 22.01. All matters pertaining to the interpretation of any and all of the provisions of the Agreement shall be adjusted by the accredited representative of the Employer and the accredited representative of the Union. In the event of the failure of these Parties to reach a satisfactory adjustment, the matter shall be referred within fifteen (15) days for final adjustment to a Joint Conference Board * * *.[1]

"* * * * *

"Section 22.06. The jurisdiction and authority of the Joint Conference Board or Arbitrator of a grievance, and the opinion and award, shall be confined exclusively to the interpretation of the explicit provision, or provisions, of this Agreement at issue between the Union and the Company. Neither the Joint Conference Board nor the Arbitrator shall be vested with the power to change, modify or alter any of the terms of this Contract.

"Section 22.07. The award in writing of the Joint Conference Board or Arbitrator within the scope of the authority provided in this Agreement, shall be final and binding on the aggrieved employee or employees, the Union and the Company.

---

[1] The agreement also sets forth a procedure for the selection of a single arbitrator to handle disputes in cases when the Board is unable to reach a decision.

"* * * * *"

We conclude that the Board's award was permissible. The collective bargaining agreement designates the Board as the parties' chosen interpreter of the agreement; the award rests on the Board's conclusion that the agreement allows it to tailor awards to the facts of the cases that come before it, and we cannot say that that interpretation is wrong.

In *United Steelworkers v. Enterprise Corp.*, 363 US 593, 80 S Ct 1358, 4 L Ed 2d 1424 (1960), employment relations between the parties were governed by a collective bargaining agreement providing that any differences "as to the meaning and application" of the agreement should be submitted to binding arbitration. The petitioners contended that they had been wrongfully discharged by the respondent, their employer, and sought reinstatement under a section of the agreement stating:

> "Should it be determined by * * * an arbitrator * * * that the employee has been suspended unjustly or discharged in violation of the provisions of this Agreement, the Company shall reinstate the employee and pay full compensation at the employee's regular rate of pay for the time lost."

The arbitrator found that the petitioners' discharges were "not justified," but instead of awarding reinstatement with full back pay, as the agreement seemed to require, he awarded "reinstatement with back pay, minus pay for a 10-day suspension and such sums as these employees received from other employment." 363 US at 595. The respondent refused to comply with the award. Although the respondent did not make an argument similar to the "no authority" argument that defendant makes in this case, the Court nonetheless discussed the scope of an arbitrator's authority to tailor a remedy to the facts of the case before it:

> "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. * * *" 363 US at 597.

The court recognized that the arbitrator was "confined to interpretation and application of the collective bargaining agreement" and could not "exceed the scope of the submission." 363 US at 597-98. Nonetheless, the Court assumed that the arbitrator had the authority to penalize petitioners ten days' pay.

Two cases from this court also help to answer the questions raised by plaintiff's appeal. In *Corvallis Sch. Dist. v. Corvallis Education Assn.,* 35 Or App 531, 581 P2d 972 (1978), the school district contended that the arbitrator lacked authority, under the collective bargaining agreement, to make an award of reinstatement and back pay. The agreement limited the arbitrator's power

> "* * * to determining whether or not there has been a violation of the [public school] law, [school district] policy, [administrative] rule, or regulation in question."

The school district contended that this provision allowed the arbitrators to determine only whether or not there had been a violation of law, policy or rule. This court held, however, that the limiting language in the collective bargaining agreement was

> "* * * at best ambiguous and thus the presumption stated in the *Steelworkers* cases [quoted above] that the arbitrator is empowered to interpret the contract and fashion remedies applies. * * *" 35 Or App at 536.

By way of further explanation, we said:

> "The arbitrator construed the limitation to mean no more than the standard limitation on arbitration contained in most collective bargaining agreements, *i.e.,* that arbitrators are to base their decisions upon the agreement, and not substitute their judgment for that of the parties with respect to matters that are specifically expressed. He concluded that the limitation clause did not restrict his implied power to fashion remedies. * * * We cannot say with 'positive assurance that the arbitration clause is not susceptible of * * * [the] interpretation' which the arbitrator placed upon it, and therefore his decision is final. *Steelworkers v. Warrior & Gulf Co., supra,* 363 US 564 at 583. * * *" 35 Or App at 537.

Finally, in *N. Clackamas Sch. Dist. v. N. Clackamas Educ. Assn.,* 54 Or App 211, 634 P2d 1348 (1981), the school district argued that the arbitrator did not have the authority to

order reinstatement of a probationary teacher for an additional year of probationary service. The pertinent provision of the agreement stated:

"A.　Binding arbitration shall be confined to:

"1.　Interpretation, meaning, or application of a specific term or provision of the collective bargaining agreement arrived at by the parties.

"2.　The question of whether the Administration follows the procedures for carrying out the Board policy that may be arrived at by the parties in collective bargaining.

"3.　The inequitable application of printed and published policies and standard practices.

"* * * * *."

We held:

"* * * The order of reinstatement, inasmuch [sic] as it does not conflict with * * * the collective bargaining agreement, was within the defined limits of the arbitrator's power. Once a violation of the collective bargaining agreement is established, the arbitrator has authority to formulate an appropriate remedy. *See Ostrer v. Pine-Eagle School Dist.,* * * * [40 Or App 265,] 270, [594 P2d 1296 (1979)]; *Corvallis Sch. Dist. v. Corvallis Education Assn.,* 35 Or App 531, 581 P2d 972 (1978)." 54 Or App at 225.

With these cases in mind, we turn again to the instant case. We note that neither party contends that the Board lacks all authority to order a remedy once it has concluded that an employe has been fired without just cause. Defendant does not contest the Board's award, and plaintiff certainly does not suggest that the Board was powerless to order her reinstatement. It is settled, then, that the Board at least has the power to order reinstatement when a discharge is without just cause and to approve a discharge when just cause exists. The question is: Can the Board fashion a remedy that falls somewhere between those two extremes? The collective bargaining agreement does not say. It is therefore up to the Board, as the designated interpreter of the agreement, to answer that question. *Corvallis Sch. Dist. v. Corvallis Education Assn., supra,* at 536. The Board has concluded that the agreement empowers it to tailor remedies to fit situations, like this one, where some disciplinary measure

is appropriate, but the employe's transgression is not serious enough to warrant a termination of employment.[2]

The Board's decision does not contravene the limitations placed on its authority by paragraph 22.06 of the collective bargaining agreement. It has simply interpreted a part of the agreement, and its interpretation does not "change, alter or modify" any provision of the agreement. Moreover, the Board's interpretation is consistent with the scheme of employment relations created by the agreement, because it allows the Board the remedial tools needed to fulfill its function as the sole dispute resolution mechanism for disagreements arising from discharges.[3]

Affirmed.

---

[2] The arbitrators in this case interpreted more than just the arbitration clause of the collective bargaining agreement. The award reads:

"Fran Brown's Discharge will be Reduced to Suspencion [sic] time off [to] be held by Safeway as time not worked an[d] [Safeway is] not held liable for wages or benefits[.] She wil[l] be returned to the work schedule starting 3/15/81[.]"

Interpretations of two provisions of the collective bargaining agreement are implicit in this statement. In addition to deciding the scope of its own authority to fashion remedies—an interpretation of the arbitration clause—the Board interpreted the discharge clause to allow employers both the power to discharge employes for just cause and the power to impose lesser disciplinary sanctions. This latter part of the Board's interpretation is not challenged here.

[3] It is clear from the whole text of the collective bargaining agreement that the parties who negotiated the agreement assumed that the Board, or Arbitrator, would have the power to order particular resolutions of employer-employe disputes. As noted in the body of the opinion, the Board as arbitrator is the only dispute resolution mechanism mentioned in the agreement. The discharge provision places all discharge disputes within the Board's arbitration authority, and the arbitration clause states that the Board awards "shall be final and binding on the aggrieved employer or employees, the Union and the Company." The system thus created reflects that the parties viewed the Board as the final authority on discharge disputes, a position that the Board can occupy effectively only if it has the ability to order different resolutions in different solutions.