Argued May 6, affirmed September 5, 1968

AUTOMOTIVE EQUIPMENT COMPANY,
*Respondent, v.* 3 BEES LOGGING CO. et al,
*Defendants,* and FARNAM, *Appellant.*
444 P. 2d 1019

*Charles R. Cater,* La Grande, argued the cause and filed a brief for appellant.

*William M. McAllister*, Portland, argued the cause for respondent. With him on the brief was C. Richard Dodson, Portland.

Before PERRY, Chief Justice, and O'CONNELL, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

HOLMAN, J.

This is an appeal by the defendant Farnam from a decree of the trial court adjudicating that plaintiff's and defendant Larison's interests in certain logging equipment were superior to that of Farnam's. After appeal to this court the defendant Farnam assigned his interest in this litigation to his wife, Betty L. Farnam, and she was substituted in his place as a party defendant and appellant. The opinion, however, is written as if Farnam were still a party.

In June of 1963 plaintiff sold five logging trucks to the defendant 3 Bees Logging Co., Inc. (3 Bees). It took back a chattel mortgage on the trucks for the purchase price of $40,682.05. 3 Bees did not have the money for a down payment. In lieu thereof plaintiff also took a collateral mortgage in the same amount upon logging equipment already owned by 3 Bees. This mortgage, however, had a provision in it that: "The above listed equipment will be released as collateral after $12,650.00 has been paid as scheduled." There was no schedule of payments in the collateral mortgage but there was a schedule of payments in the note and the principal mortgage which secured it. All documents were executed the same day. The interests in the equipment listed in the collateral mortgage are those now in dispute.

The defendant Farnam was a creditor of 3 Bees, having sold them supplies over an extended period of

time. In November of 1963, 3 Bees gave Farnam a note in the sum of $14,500 to cover the accumulated past-due indebtedness on its account. The note was secured by a chattel mortgage on the identical equipment covered by the collateral chattel mortgage previously given to plaintiff. On February 6, 1967, 3 Bees gave possession of the equipment to Farnam.

On February 21, 1967, 3 Bees filed its voluntary petition in bankruptcy and was adjudicated bankrupt. Thereafter, defendant Farnam entered into an agreement with 3 Bees' Trustee in Bankruptcy, the defendant Larison, which provided that the equipment be delivered to the trustee for sale by him. The proceeds were to be held by the trustee subject to his claims and those of Farnam or any third party. The validity of the claims were "* * * to be determined by litigation or other means, * * *."

Thereafter, plaintiff brought this suit against all defendants to foreclose its collateral mortgage. The interests of the named defendants, other than Farnam, the trustee and 3 Bees, are not material to the disposition of this appeal. The defendant Farnam filed a cross complaint seeking foreclosure of his mortgage, contending his security interest was superior to any claims of plaintiff to the property. The trustee filed an answer to Farnam's cross complaint asserting that Farnam's mortgage constituted a voidable preference under the Bankruptcy Act because it was taken within four months prior to 3 Bees' petition in bankruptcy and at a time when 3 Bees was insolvent and Farnam had knowledge thereof.

Thereafter, plaintiff and the trustee entered into a settlement of their respective claims to the proceeds of the property and agreed to its division between them. Pursuant to this agreement the trustee assigned

all of his interest in part of the proceeds to plaintiff and retained the balance. Thereafter plaintiff filed a supplemental complaint also asserting that it was the assignee of the trustee.

The case proceeded to trial, plaintiff's attorney representing both plaintiff and the trustee. The court found that plaintiff's interest was superior to that of Farnam's, foreclosed plaintiff's mortgage and held that Farnam's mortgage was void as to the trustee.

■ Farnam contends the court erred in holding plaintiff's prior collateral mortgage to be valid because there was no real consideration expressed therein. He argues that the mortgage, by its terms, was not to be performed within one year and therefore that it came within the purview of the Statute of Frauds, ORS 41.580,[1] which requires such an expression. The collateral mortgage contained the following recitation of consideration for its execution:

> "* * * in consideration of the execution by Mortgagor, of a certain chattel mortgage * * * now held by Automotive Equipment Company herein called mortgagee and for other good and valuable considerations the receipt whereof by Mortgagor is hereby acknowledged, * * *."

Farnam points out that the consideration must move from the promisee to the promisor and that 3 Bees, the mortgagor, being the promisor, the recited execution of a previous mortgage by it could not be consideration

---

[1] "In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

"(1) An agreement that by its terms is not to be performed within a year from the making."
* * * * *

moving to it that would support the collateral mortgage.

There are other answers to Farnam's contention, but a short one is that, conceding but not deciding the statute of frauds to be applicable, the words "for other good and valuable consideration" are a sufficient expression of consideration to satisfy the statute. See *First Nat. Bank v. Hawkins*, 73 Or 186, 188, 144 P 131 (1914), holding that the words "value received" were a sufficient expression of consideration without further detail relative to what constituted the value.

■ Farnam concedes that the payments on account were not made on their scheduled dates. He contends, however, that the sum of $12,650 was paid and the account was brought to current status upon the receipt of insurance proceeds which were paid directly to plaintiff when one of the trucks was destroyed, and, therefore, the equipment should have been released. Farnam argues that the insurance proceeds should have been applied to the current payments instead of on the last payments due under the contract as plaintiff applied them. We conclude that the proceeds should not have been applied in their entirety to the current payments, because this would result in plaintiff having only four trucks as security for the remaining payments when it had contracted to have five. There is also a good argument for not applying the insurance proceeds in their entirety to the last payments either. The contract contemplated that 3 Bees would have five trucks to earn the income necessary to make the payments, and only four trucks remained after one was destroyed. It is not necessary for us to decide whether the insurance proceeds were properly applied by plaintiff, or should have been credited equally to all remaining payments because, even then, the schedule of payments would at

no time have been current after $12,650 was paid. If, after $12,650 had been paid, the schedule of payments had become current, a different question would have arisen.

■ In order to avoid the significance of the words "as scheduled" Farnam first contends that they are of no effect because there is no way to ascertain with certainty what schedule was referred to. This claim is without merit. The note, principal mortgage and collateral mortgage were all executed on the same day, obviously as part of a single transaction, the purpose of which was the sale of the trucks. Therefore, they are properly construed together and when so construed, the schedule referred to is obviously the schedule of payments appearing in the principal mortgage and the note which was given as the purchase price for the trucks. See 3 Corbin on Contracts 188, § 549.

■■ Farnam next contends that even though the payments were not made as scheduled, and the account under the contract was at no time current, the mortgage was released when a total of $12,650 was paid without regard to its time of payment. It is the duty of the court to interpret a document so that no part of it is ignored, if by any reasonable method of interpretation effect can be given to such part as well as to the remaining parts. *Hardin v. Dimension Lbr. Co.*, 140 Or 385, 390, 13 P2d 602 (1932). The interpretation requested by Farnam would require that the words "as scheduled" be ignored entirely. These words can only be given meaning if the document is construed to mean that the equipment was intended to provide security for the full amount of $40,682.05 unless $12,650 was paid *when it was due*. This was never done. There is a logical reason for such an interpretation. If 3 Bees

demonstrated an ability to keep the contract current, plaintiff may have been willing, thereafter, to take less security than it would have otherwise.

■ Farnam next argues that the acceptance of late payments constituted a waiver of the schedule of payments and, therefore, the mortgage was released at the time $12,650 was paid. He relies upon the rule holding that time essence clauses may not be enforced if late payments have been accepted and no notice has been given that strict compliance would be insisted upon in the future. Farnam fails to recognize the distinction between the relinquishment of the right to declare an immediate breach of contract and a forfeiture, as compared with the waiver of security for a contract's performance. He would place plaintiff in a position where he could not accept a late payment without the possibility of prejudicing his security. A secured creditor, because of his security, will be more likely to accept a late payment than to immediately foreclose and insist upon a forfeiture. The authority upon which Farnam relies is inapplicable.

He also argues that a new schedule was agreed upon and this was a waiver of the original schedule of payments with which 3 Bees did not comply. Even if this were so—and the evidence is not clear—the substituted schedule was not complied with either. In any event, there was no release of the security.

■ Farnam contends that the subsequent giving of a real property mortgage by an officer of 3 Bees as security for the payment of the purchase price of the trucks was a release of plaintiff's collateral mortgage covering the personal property in question. There is no evidence that any such release was made or intended. The intent was to acquire additional security.

■ Defendant Farnam contends that it was improper for the court to permit plaintiff's attorney to represent the trustee in the trial of the case. It was not error. The defendant Farnam could not have been prejudiced by it in any way.

The plaintiff's security interest in the property in question was prior in time to that of the defendant, Farnam. We have found that it remained unimpaired. It is therefore unnecessary to consider Farnam's assignments of error relating to the trial court's holding that Farnam's mortgage constituted a voidable preference as to the trustee. The trustee was entitled to that portion of the proceeds of the equipment retained by it by virtue of its agreement with plaintiff without regard to whether Farnam's mortgage constituted a voidable preference as to it.

The decree of the trial court is affirmed.