Argued and submitted January 28, affirmed March 23, 1981

PORTLAND ASSOCIATION OF TEACHERS et al,
*Petitioners - Cross-Respondents,*

*v.*

PORTLAND SCHOOL DISTRICT NO. 1,
*Cross-Petitioner - Respondent,*
*and*
EMPLOYMENT RELATIONS BOARD,
*Respondent.*

(No. C-199-79, CA 18395 (control), CA 18405)

PORTLAND ASSOCIATION OF TEACHERS,
*Petitioner - Cross-Respondent,*

*v.*

SCHOOL DISTRICT NO. 1,
*Cross-Petitioner - Respondent.*
*and*
EMPLOYMENT RELATIONS BOARD,
*Respondent.*

(No. C-145-78, CA 18396, CA 18406)

(cases consolidated)

625 P2d 1336

Robert D. Durham, Eugene, argued the cause for petitioners - cross-respondents. With him on the briefs were Kulongoski, Heid, Durham and Drummonds, and Jennifer Friesen, Eugene.

Mark C. McClanahan, Portland, argued the cause for cross-petitioner - respondent. With him on the briefs were Miller, Nash, Yerke, Wiener & Hager, and David W. Anderson, Portland.

No appearance for respondent Employment Relations Board.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

## ROBERTS, J.

In these consolidated cases petitioner Portland Association of Teachers (PAT) and individual petitioner Dunlop seek judicial review of two orders issued in unfair labor practice complaints before the Employment Relations Board (ERB).[1] In both cases ERB ordered respondent school district to arbitrate grievances relating to teacher evaluations allegedly affected by "arbitrariness or capriciousness," but refused to order arbitration of grievances relating to teacher evaluations affected by an alleged procedural error. PAT asks us to remand to ERB for entry of an order compelling the school district to arbitrate the procedural claims. The school district filed a cross-petition seeking to have the unfair labor practice complaints dismissed. We affirm ERB's order.

The 1977-1979 collective bargaining agreement between the parties provides for "in-district" grievance of most employe complaints, with arbitration authorized only for limited types of complaints. Article 6 of the agreement defines a grievance as:

"* * * a contention by an aggrieved that there has been a violation, misinterpretation, or erroneous application of School District policies (including this Agreement) and/or administrative rules and regulations."

The procedure in the agreement for in-district processing of grievances entails three successive "levels" for unresolved grievances. Level I is the presentation to the immediate supervisor, Level II is the presentation to the Area Superintendent, and Level III is the presentation to the Superintendent and the School Board. Arbitration is reserved for certain grievances unresolved after a level III determination:

"LEVEL IV -- ARBITRATION

"Insofar as the Board decision on a grievance at Level III is alleged by the aggrieved with written concurrence of the Association to be a violation, misinterpretation or

---

[1] ERB case No. C-145-78 was an unfair labor practice complaint brought by PAT on behalf of seven other teachers; it was filed on August 29, 1978. Case C-199-79 was the complaint filed by PAT and Dunlop on August 29, 1979. Both seek arbitration of procedural and "arbitrariness" violations in teachers' evaluations.

erroneous application of a specific provision of this Agreement and does not involve either (1) dismissal, demotion, retention, or reemployment of personnel, (2) correctness of evaluation or (3) claims of discrimination by reason of age, race, [etc.] * * *, the aggrieved with written concurrence of the Association or the Board may require that such decision be submitted for arbitration."

Arbitration is final and binding only:

"Insofar as the decision (1) involves only the matters subject to arbitration as described hereinabove in this level, [and] (2) is in accordance with the legal meaning of this Agreement."

Article 8 of the agreement is the section dealing with teacher evaluations. Section 8D states the procedure for filing a grievance procedure for evaluations:

"In the event that the teacher feels that the evaluation was incomplete or unjust, he/she may put his/her objections in writing and have them attached to the evaluation report, * * *. In the event the teacher desires to have further relief from such report he/she shall utilize the grievance procedures described elsewhere in this Agreement within ten (10) days of such report. Grounds for modification or withdrawal shall be that the portion of the evaluation grieved was materially produced or affected by (1) a procedural error of failing to follow the procedures provided in this Agreement, or (2) arbitrariness or capriciousness, * * *. A grievance proceeding will not result in a requirement that the evaluation be modified or withdrawn if all that is shown is a good faith difference in professional opinion as to its correctness."

■ In the grievances at issue in this proceeding, PAT claims the school district committed "procedural error of failing to follow the procedures provided in [the] Agreement" by violating the following portion of Section 8A, setting standards for teacher evaluation:

"Criteria, rationale and procedural steps in the evaluation process may include (1) the Standards of Competent and Ethical Professional Performance for Oregon Certificated Educators as developed by the Teachers Standards and Practices Commission and adopted by the Board of this District December 11, 1972, and (2) those set forth in the brochure District-wide Teacher Evaluation (revised 1974) as developed by the District Educators Council, or as amended by these respective bodies."

PAT contends that the procedures in the brochure entitled "District-Wide Teacher Evaluation," referred to by both parties as "the blue brochure," are, by this section of the agreement, *required* procedures on the part of the school district. PAT contends that the agreement is at least ambiguous on this point and that the union is therefore entitled to have an arbitrator to determine the arbitrability of its claim. *Corvallis Sch. Dist. v. Corvallis Education Assn.,* 35 Or App 531, 581 P2d 972 (1978).

In *Corvallis* the court cited with approval the standard enunciated by the U. S. Supreme Court in *Steelworkers v. Warrior & Gulf Co.,* 363 US 574, 80 S Ct 1347, 4 L Ed 2d 1409 (1960):

"* * * An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." 363 US at 582-83. 35 Or App at 535.

The school district, of course, contends the agreement is unambiguous, and that it is clear on its face that the district was not required to use the blue brochure standards, but that it *may* use them in adopting the formal written procedure which was to be distributed to teachers before evaluation.

This question is like many questions of statutory construction and boils down to consideration of the recurrent "may/shall" distinction. PAT maintains "may" can be directive as well as permissive, but cites only Webster's New Collegiate Dictionary and bargaining history between the parties in support of its position. The school district, on the other hand, cites the full text of Section 8A of the agreement to show that the parties used the imperative "shall" five times and the word "may" only twice in that section. The district argues this shows the word "may" did *not* mean the same thing as the word "shall" in that context.[2] ERB found it clear from the face of Article 8A

---

[2] Section 8A reads in full as follows:

"Teacher Evaluation
"The performance of all teachers *shall* be evaluated in writing. Probationary teachers *shall* be evaluated at least two (2) times during the school

that "may" was not used as a substitute for "shall"[3] and we agree.

In interpreting legislative acts, the Supreme Court has said that the same word used in different parts of a statute is presumed to be used in the same sense throughout, absent an indication of contrary intent. *School Dist. No. 17 of Sherman County v. Powell,* 203 Or 168, 279 P2d 492 (1955); *Holman Transfer Co. v. City of Portland,* 196 Or 551, 249 P2d 175 (1952). Conversely, when one word ("shall") is used consistently within a paragraph to direct mandatory behavior, we believe the deliberate choice of another word ("may") in a similar context indicates a deliberate difference in meaning. From the face of Article 8A the failure of the school district to use blue book procedures is not a procedural error in evaluation which qualifies an affected teacher for grievance arbitration.

We turn now to respondent district's cross-petition, which makes seven assignments of error. These assignments of error are various embellishments of three essential points. The district contends: (1) there should be no arbitration of the substantive content of teacher evaluations, since it is a matter of "important educational policy" and not a matter of "employment relations" within the

year; No later than December 6 and February 1, except that the December 6 date may be varied for 'year-round' schools. In the event that a *'shall* not recommend reelection' evaluation is received on the February 1 evaluation, the teacher and/or administrator *may* request and have conducted an additional evaluation. Tenured teachers *shall* be evaluated at least once every year, and the evaluation report should be submitted by March 1 of the year of evaluation. Written forms setting forth criteria to be utilized in evaluating teachers *shall* be distributed to the teachers involved prior to being utilized in the evaluation process by an evaluating administrator. Criteria, rationale and procedural steps in the evaluation process *may* include (1) the Standards of Competent and Ethical Professional Performance for Oregon Certificated Educators as developed by the Teachers Standards and Practices Commission and adopted by the Board of this District December 11, 1972, and (2) those set forth in the brochure District-wide Teacher Evaluation (revised 1974) as developed by the District Educators Council, or as amended by these respective bodies." (Emphasis supplied.)

[3] ERB apparently also considered evidence PAT made proposals during the 1977 contract negotiations to change the "may" in question to "shall," but lost. While both parties have spent a considerable amount of time here and before ERB arguing about their bargaining history, we cannot consider that history absent an ambiguity in the contract's terms.

jurisdiction of ERB; (2) arbitration about contractual language is proper only when an ambiguity in language appears in the substantive part of the collective bargaining agreement and not when it occurs in the arbitration clause itself; and (3) the grievances are barred from arbitration by Article 6 of the contract, prohibiting arbitration of grievances involving correctness of a teacher's evaluation or an issue of dismissal, demotion, retention or reemployment, and by Article 8D, which says no modification will be made for disputes over the correctness of an evaluation. The district also argues PAT is barred from arbitration on some or all of the grievances because the teachers involved failed to follow the contract grievance timetables. These contentions are all lacking in merit.

First, the grievances filed by PAT alleged that the evaluations were affected by "arbitrariness or capriciousness." The parties have agreed, in Article 8D of their contract, that such a complaint is proper grounds for a grievance, and by Article 6, that such a grievance, if unresolved, is a subject for arbitration. Having agreed to arbitrate such matters, the district must do so. *Central Point Sch. Dist. v. ERB,* 27 Or App 385, 292, 555 P2d 1269 (1976), *rev den* (1977). In relation to the second and third issues raised by the district, ERB found the terms "arbitrariness," which appears in the teacher evaluation portion of the contract, and "correctness," which appears in the arbitration clause and the evaluation grievance clause, both to be ambiguous. Whether, on the merits, the claims involved arbitrariness or an issue such as correctness, which was barred from arbitration, was properly left to an arbitrator. ERB was correct. The presence of ambiguous language in a contract, whether in the arbitration clause or the substantive portions of the contract itself, is precisely the situation in which the question of arbitrability is one to be decided by the arbitrator. *Steelworkers v. Warrior & Gulf Co., supra; Corvallis Sch. Dist v. Corvallis Education Assn., supra; Portland Teachers v. School District, supra.* Lastly, once it is determined that the parties are obligated to submit the subject matter of a dispute to arbitration, questions as to whether grievance procedures have been met should be left to the arbitrator. *Wiley & Sons v.*

*Livingston, supra,* 376 US at 555-557. The order of ERB is affirmed.

Affirmed.