Argued and submitted February 17, resubmitted In Banc December 8, 1993, reversed and remanded for further proceedings February 23, petition for review denied April 26, 1994 (319 Or 36)

## SNOW MOUNTAIN PINE, LTD.,
*Appellant,*

*v.*

## TECTON LAMINATES CORP.,
*Respondent.*

(91-12-10176-E, 91-10-10148-E; CA A75677)

869 P2d 369

Barbee B. Lyon argued the cause for appellant. With him on the briefs were William F. Martson, Jr., James C. Loy and Tonkon, Torp, Galen, Marmaduke & Booth.

John S. Ransom argued the cause for respondent. With him on the brief was Ransom, Blackman & Weil.

DURHAM, J. pro tempore.

Landau, J., dissenting.

## DURHAM, J. pro tempore

Plaintiff appeals from a judgment on an arbitration award. ORS 36.365. It assigns error to the court's orders abating the action and compelling arbitration, designating an arbitration panel[1] and refusing to set aside the arbitration award. We reach only the first two issues. We reverse the judgment and remand for further proceedings.

The dispute in this case stems from four agreements between defendant, which owns a lumber mill that makes laminated veneer, and plaintiff,[2] which owns an adjacent sawmill. Defendant's sole shareholder was the principal partner in the company from which plaintiff purchased the sawmill.

The parties entered into the agreements in connection with plaintiff's purchase of the sawmill. Two of the agreements are in dispute. The first agreement, known as the "Log Supply Agreement," provided that plaintiff would transfer to defendant certain logs that it obtained from the United States Forest Service. The agreement specified that title to the logs would pass to defendant as soon as the logs reached plaintiff's log yard, but that defendant would pay for the logs when plaintiff was required to pay the Forest Service. The second agreement, the "Log Yard Agreement," provided that plaintiff would unload, scale, sort, deck and deliver the logs that it transferred to defendant. The agreement also provided that plaintiff would deliver steam and electricity to defendant which, in exchange, would deliver all of its hog fuel (i.e., waste wood products) to help produce the steam and

---

[1] The court's order said:

"[I]t is

"HEREBY ORDERED that defendant's motion to abate and compel arbitration is granted; and it is

"FURTHER ORDERED that this dispute be decided by the same arbitration panel that heard American Arbitration Association Case No. 75-199-0034-91, and that said arbitration panel, which is currently scheduled to hear the parties' disputes under Harney County Circuit Court Case No. 91-10-10148, consolidate its hearing on both cases, with the recommendation of this court that, if at all possible, the combined arbitration hearing be scheduled within thirty days of the date of this order."

[2] Snow Mountain Pine *Corporation*, which is not a party to this action, purchased the sawmill and then assigned its rights to plaintiff, Snow Mountain Pine, *Ltd.* We refer to both as "plaintiff."

electricity. The parties signed all of the agreements on the same day, and each contains an "entire agreement" clause that refers to the other agreements. For example, the Log Yard Agreement provides, as material:

> "*Entire Agreement*. This Agreement, the Lease, the Log Supply Agreement and the documents delivered in connection with the Acquisition constitute the entire agreement between the parties concerning the subject matter hereof * * *."

The Log Yard Agreement also contains an arbitration clause, which provides, in part:

> "Any controversies or claims arising out of or relating to this Agreement or the breach thereof, shall be settled by arbitration in Portland, Oregon, in accordance with the then current rules of the American Arbitration Association * * *."

Although the three agreements contain several duplicated provisions, only the Log Yard Agreement contains an arbitration clause.

In 1991, plaintiff sought arbitration of a dispute under the Log Yard Agreement. Defendant raised counterclaims, some of which concerned disputes under the Log Supply Agreement. The parties agreed to submit all of the disputes to arbitration.

When additional disputes arose concerning defendant's payments under the Log Supply Agreement, plaintiff refused to deliver additional logs, declared the agreement terminated and brought this action for damages and a declaration that defendant was in breach of the contract. Defendant moved to abate the action and to compel arbitration. The trial court granted the motion and also ordered that the panel that heard the earlier dispute under the Log Yard Agreement should hear this case as well.

Plaintiff argues that the court erred in compelling arbitration, because the dispute arose under the Log Supply Agreement, and it contains no arbitration clause. It contends that the arbitration clause in the Log Yard Agreement applies only to controversies or claims arising out of that agreement, and this dispute does not meet that description.

Defendant's motion to abate plaintiff's action and to compel arbitration is governed by ORS 36.315, which provides:

"If any action, suit or proceeding is brought upon any issue arising out of an agreement which contains a provision for arbitration of the matter in controversy in such action, suit or proceeding, then, upon application, any judge of a circuit court, upon being satisfied that the issue is referable to arbitration, shall abate the action, suit or proceeding so that arbitration may be had in accordance with the terms of the agreement. The application shall be heard similarly to hearings on motions."

The court examined the parties' pleadings and agreements to determine whether the action was "referable to arbitration" under the statute. The complaint alleges, as material:

"5.

"Paragraph 5(a) of the Log Supply Agreement requires Tecton to pay SMP [plaintiff] for associated species logs [ASL] acquired by SMP directly from the United States Forest Service in accordance with the schedule contained in paragraph 5(a). Specifically,

" 'Tecton [defendant] shall pay (i) SMP's Allocated Stumpage Costs with respect to ASL delivered during any month on or before the 25th day of the following month, and (ii) the Log Yard and Logging Costs and Reasonable Administrative Fees (A) on or before the 25th day of the month in which the ASL is delivered, with respect to ASL delivered on or after the first day to and including the 15th day of each month, and (B) on or before the 10th day of the month following the month in which the ASL is delivered, with respect to ASL delivered on or after the 16th day of the month to the end of the month.'

"6

"SMP asserts and Tecton denies that Tecton has breached its obligation to SMP under paragraph 5(a) of the Log Supply Agreement in at least the following particulars:

"a.   Tecton has failed to pay SMP, on or before September 25, 1991, for SMP's Log Yard and Logging Costs and Reasonable Administrative Fees, for logs delivered during the first half of September, in the amount of $75,577.45.

"b.   Tecton has failed to pay SMP, on or before October 10, 1991, for SMP's Log Yard and Logging Costs and Reasonable Administrative Fees for logs delivered in the latter half of September, in the amount of $62,923.46.

"c.   Tecton has failed to pay SMP, on or before October 25, 1991, for SMP's Allocated Stumpage Costs with respect to ASL delivered during September, in the amount of $42,915.47.

"d.   Tecton has failed to pay SMP, on or before October 25, 1991, for SMP's Log Yard and Logging Costs and Reasonable Administrative Fees for logs delivered in the first half of October, in the amount of $63,445.77.

"e.   Tecton has failed to pay SMP, on or before November 10, 1991, for SMP's Log Yard and Logging Costs and Reasonable Administrative Fees for ASL delivered during the latter half of October, in the amount of $67,401.14.

"f.   Tecton has failed to pay SMP, on or before November 25, 1991, for SMP's Allocated Stumpage Costs with respect to ASL delivered during October, in the amount of $22,602.49.

"g.   Tecton has failed to pay SMP, on or before November 25, 1991, for SMP's Log Yard and Logging Costs and Reasonable Administrative Fees for ASL delivered during the first half of November, in the amount of $72,838.44."

The complaint also generally alleges that plaintiff had performed all conditions precedent to defendant's performance, and that defendant's material breaches entitles it to damages and to relief from any future obligations under the Log Supply Agreement.

■      Plaintiff asserts that the Log Supply Agreement is the only agreement that is relevant to the dispute described in the complaint, and it does not contain an arbitration clause. That begs the question of what is the parties' agreement. When parties contemporaneously execute multiple agreements that address interrelated subjects, we are bound to construe them together as one contract to discern the parties' intent. *Hays v. Hug*, 243 Or 175, 177, 412 P2d 373 (1966); *Waxwing Cedar Products v. C & W Lumber*, 44 Or App 167, 170, 605 P2d 719 (1980).

"When a written instrument refers in specific terms to another writing as containing part of the agreement, the other writing is itself a part of the contract between the

parties." *Weber v. Anspach*, 256 Or 479, 483, 473 P2d 1011 (1970).

The Log Supply Agreement and Log Yard Agreement recite that they "constitute the entire agreement between the parties concerning the subject matter hereof * * *." We will construe them together to determine whether the parties intended to arbitrate any issues arising out of the agreement that contains the arbitration clause.

■ We are bound to construe the arbitration agreement liberally to enhance arbitrability.

> "Oregon's policy is to construe general arbitration agreements broadly to enhance arbitrability of disputes. *Cf. Abbott v. Bob's U-Drive, et al*, 222 Or 147, 153-55, 352 P2d 598, 81 ALR 2d 793 [1960] (arbitration statutes liberally construed); *Corvallis Sch. Dist. v. Corvallis Education Assn.*, 35 Or App 531, 535, 581 P2d 972 (1978) (arbitration clauses to be interpreted in manner which favors coverage of the dispute)." *Budget Rent-A-Car v. Todd Investment Co.*, 43 Or App 519, 524, 603 P2d 1199 (1979).

Under that policy, arbitration is required, unless we can say with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, and we resolve all doubts in favor of coverage. *Portland Assn. of Teachers v. School District No. 1*, 51 Or App 321, 325, 625 P2d 1336 (1981).

> "The presence of ambiguous language in a contract, whether in the arbitration clause or the substantive portions of the contract itself, is precisely the situation in which the question of arbitrability is one to be decided by the arbitrator." 51 Or App at 327.

In determining whether an arbitration agreement arguably covers a dispute, we examine not only the arbitration clause, but the entire contract, subsidiary agreements, the relationship of the parties, the subject matter of the contract, the practical construction the parties themselves have placed on the contract by their acts, and other external circumstances that cast light on the intent of the parties. "The conduct of the parties to an agreement is strong evidence of their interpretation of it." *U.S. Nat'l Bank v. Caldwell*, 60 Or App 639, 644, 655 P2d 180 (1982), *rev den* 294 Or 536 (1983).

Plaintiff's complaint alleges that defendant breached paragraph 5(a) of the Log Supply Agreement by, among other things, failing to pay for plaintiff's "log yard costs" for several log deliveries in September, October and November, 1991. We must determine whether those allegations describe a dispute that is arguably covered by the arbitration clause in the Log Yard Agreement. The Log Supply Agreement defines "log yard costs" as "the fee specified in Paragraph 2(c) of the Log Yard Agreement."

Paragraph 2(c) of the Log Yard Agreement requires defendant to pay fees for continuing log processing and delivery services described in paragraphs 2(a) and (b) of that agreement. Paragraphs 2(a), (b) and (c) provide, in part:

"(a) *Interim Services.* [Plaintiff] and [defendant] acknowledge that [defendant] is currently unable to process logs that it obtains from [plaintiff] under the Log Supply Agreement. [Defendant] agrees to use its commercially reasonable efforts to obtain the necessary facilities and equipment to process logs as soon as possible, and in any event within nine (9) months from the Effective Date. [Plaintiff] agrees, for a period of nine (9) months from the Effective Date or until [defendant] is able to provide its own processing, whichever occurs earlier (the 'Interim Period'), to feed into the merchandiser and debark logs owned by [defendant]. [Plaintiff] agrees during this period to provide capacity sufficient to perform such processing for the logs supplied to [defendant] under the Log Supply Agreement, up to 600,000 board feet of logs in any calendar week.

"(b) *Continuing Services.* [Plaintiff] agrees, for a period beginning with the Effective Date and continuing until five (5) years from the Effective Date, to unload, scale, sort, deck and deliver logs owned by [defendant] to [defendant's] barking and merchandising system (or, if Paragraph 2(a) above is then in effect, to the appropriate location following completion of the services there described) at the area (the 'Log Yard') within [plaintiff's] premises commonly known as the 'Log Yard,' or to such other place on [plaintiff's] premises or [defendant's] adjacent premises as [defendant] may specify in writing to [plaintiff].

"(c) *Fees.* For the services performed by [plaintiff] under Paragraph 2(a), [defendant] agrees to pay [plaintiff], to the extent not paid under the Log Supply Agreement, a monthly service fee of $3.84 per thousand board feet of logs,

and, in addition, for services performed by [plaintiff] under Paragraph 2(b), [defendant] agrees to pay [plaintiff], also to the extent not paid under the Log Supply Agreement, a monthly service fee of $8.00 per thousand board feet of logs."

■      The complaint describes a controversy or claim that arguably arises out of or relates to the Log Yard Agreement or its breach, within the meaning of the arbitration clause. The "Log Yard Costs" that plaintiff claims under the Log Supply Agreement are fees stated in paragraph 2(c) of the Log Yard Agreement for log processing and delivery services that plaintiff must render to defendant under paragraph 2(a) and (b) of that agreement, unless those duties are suspended by defendant's breach. Plaintiff contends that, because of defendant's insolvency and breach, it was entitled to refrain from performing those services, to deliver logs to another site and to demand cash or further assurances of payment before delivering logs to the log yard. Plaintiff acknowledges that defendant denies any breach. If defendant did not breach the Log Supply Agreement, plaintiff was not entitled to suspend its performance under the Log Yard Agreement, and it is not entitled to the log yard fees that it claims in this action. Because any determination of plaintiff's right to those fees must necessarily include a determination whether plaintiff breached the Log Yard Agreement, the dispute is arguably arbitrable under the arbitration clause.

■      The court also examined the conduct of the parties, as evidence of their intention in agreeing to the arbitration clause, and found that the parties have previously agreed, without reservation, to arbitrate disputes that arose, in the form of counterclaims, under the Log Supply Agreement. That conduct is relevant when considered in the context of the ambiguity of the broad arbitration clause in the Log Yard Agreement.[3] It indicates that the parties did not intend to rule out arbitration of disputes over related rights and duties that implicate the two agreements. *See U.S. Nat'l Bank v.*

---

[3] We do not hold that the parties may be forced to arbitrate on the basis of their conduct. A written agreement that arguably covers the asserted dispute is a prerequisite to an order to arbitrate under ORS 36.315. *See Halvorson-Mason Corp. v. Emerick Const. Co.*, 304 Or 407, 412, 745 P2d 1221 (1987). Our reference to the court's discussion of the parties' past conduct is only meant to indicate that where, as here, the necessary written agreement exists, the court does not err in considering whether the parties' conduct sheds light on their contractual intent.

*Caldwell, supra,* 60 Or App at 644. The trial court adopted that inference, stating that the "parties' actions speak louder than their words." Plaintiff rejects that inference because "it is at least as likely that Snow Mountain Pine simply went along voluntarily with arbitration on that one previous occasion." The trial court's analysis was correct because, in determining whether conduct of the parties is a practical construction that reflects their written agreement to arbitrate a particular dispute, we resolve all reasonable doubts in favor of arbitration.

■ We do not disagree with the dissent's contention that the phrase "this Agreement" in the arbitration clause refers to the Log Yard Agreement. However, that does not answer the issue before the court. That clause makes arbitrable "[a]ny controversies or claims arising out of or relating to this Agreement or the breach thereof * * *." We determine only that this case presents a controversy or claim that arguably arises out of or relates to the Log Yard Agreement, because that contract entitles plaintiff to log yard costs if it performs certain duties that, according to the record, it did not perform. The dissent claims that that fact is irrelevant and cites passages in each agreement that entitle plaintiff to payment of those costs whether or not the Log Yard Agreement is in effect. The dissent's arguments do not resolve the arbitrability issue. Only an interpretation of the Log Yard Agreement will resolve the question of whether, as plaintiff contends, the right to log yard costs is not dependent on performance of the obligations stated in the Log Yard Agreement. As the court correctly decided, the parties' Log Yard Agreement requires an arbitrator to perform the task of interpretation.

■ We do not decide today that all aspects of the parties' dispute are subject to arbitration.[4] The determination of the

---

[4] We do not analyze every term of the Log Yard Agreement that may require interpretation by an arbitrator. For example, the Log Supply Agreement, paragraph 5(a), entitles plaintiff to its log yard costs when it "delivers" logs. The Log Yard Agreement, paragraph 2(b), conditions its right to those costs on its agreement to "unload, scale, sort, deck and deliver" logs to defendant. In addition, the Log Yard Agreement, paragraph 2(d)(i), says that plaintiff "may not terminate its obligations hereunder unless it ceases to operate the Log Yard." Plaintiff argues that it was entitled to terminate its processing and delivery services under paragraph 2(b), but it did not shut down the log yard. Those agreements may afford defenses to liability for the log yard fees that plaintiff claims. We do not address the applicability or meaning

coverage of the arbitration clause and the scope of arbitrable issues is, in the first instance, a task for the arbitrator. The trial court correctly ordered arbitration, because this action raises issues that are "referable to arbitration" under ORS 36.315.

■    Plaintiff also assigns error to the court's order requiring the parties to submit to arbitration before an arbitration panel that they selected to decide a separate dispute. The arbitration clause provides a procedure for selecting an arbitrator. The parties agree that that procedure permits the parties to participate in the selection of the arbitrator or arbitration panel.

ORS 36.320 provides:

> "If, in the arbitration agreement, no provision is made for the manner of selecting the arbitrators, or if, for any reason, there is a failure to act or a vacancy, and no provision in the agreement for the filing thereof, then, upon application of any party to the agreement, any court of record shall appoint an arbitrator or arbitrators to fill the vacancy, who shall act with the same force and effect as if specifically named in the arbitration agreement. Unless otherwise provided, the arbitration shall be by a single arbitrator."

Under the statute, if the parties' agreement provides a method for selecting an arbitrator, the court has no reason to appoint an arbitrator when it abates the action under ORS 36.315. The court erred in ordering the parties to submit to arbitration before a panel designated by the court. Defendant contends that plaintiff did not timely object to the court's order, but the record refutes that argument. Plaintiff is entitled, on remand, to participate in the arbitrator selection process to which it agreed.

Reversed and remanded for further proceedings.

**LANDAU, J.,** dissenting.

This case presents a straightforward question of contract construction: Does plaintiff's lawsuit arise out of or relate to a Log Yard Agreement, which contains an arbitration clause, or a Log Supply Agreement, which does not? The

___

of those Log Yard Agreement provisions except to note that they appear to be part of the controversy that an arbitrator must decide.

majority concludes that the lawsuit arises out of or relates to the Log Yard Agreement, and so it is subject to the arbitration clause. The problem with that conclusion is that it cannot be squared with the nature of the parties' dispute, the language of their agreements and the law under which those agreements should be interpreted. In my view, a correct reading of the complaint and the agreements leads to the conclusion that the lawsuit arises out of the Log Supply Agreement only and, consequently, it is not subject to arbitration. Accordingly, I respectfully dissent.

To understand the proper disposition of this case, more about the contracts at issue and the nature of the parties' dispute must be understood than is set out in the majority's opinion. The parties in this case executed four separate agreements in connection with the purchase of a sawmill. Two of the agreements are relevant in this case.

First, in the Log Supply Agreement, plaintiff agreed to sell to defendant logs that plaintiff obtained from the United States Forest Service (Forest Service). The agreement provides that, although title to the logs would pass to defendant when they were unloaded and scaled, defendant was not required to pay for them until the date plaintiff had to pay the Forest Service. Second, in the Log Yard Agreement, plaintiff agreed to lease defendant a place to store the logs and to provide certain services related to the processing of those logs.

Both agreements contain payment provisions. The Log Supply Agreement contains the following provision at paragraph 5:

"[Defendant] shall pay (i) [plaintiff's] Allocated Stumpage Costs * * * (ii) the Log Yard and Logging Costs and Reasonable Administrative Fees * * *."

"Allocated Stumpage Costs," "Logging Costs" and "Reasonable Administrative Fees" are defined in the Log Supply Agreement. The "Log Yard" costs that defendant must pay under the Log Supply Agreement are defined by cross-reference to the Log Yard Agreement, "whether or not the Log Yard Agreement is then in effect." The Log Yard Agreement provides that defendant will pay plaintiff, "to the extent

not paid under the Log Supply Agreement," a fee of $8 per thousand board feet of logs.

Both agreements contain multiple provisions that are identical to one another. For example, both contain identical provisions concerning the status of parties, notice, applicable law, waiver, assignments, third-party beneficiaries, severability, integration and force majeure. Of the two agreements, however, only one—the Log Yard Agreement—contains an arbitration clause, which provides:

"Any controversies or claims arising out of or relating to this Agreement or the breach thereof, shall be settled by arbitration * * *."

In 1991, defendant encountered financial difficulties, which precipitated several disputes with plaintiff. In one of those disputes, not the subject of this action, plaintiff complained that defendant had failed to perform certain obligations under the Log Yard Agreement. Because the dispute arose out of the Log Yard Agreement, it went to arbitration. Defendant asserted a number of counterclaims in the arbitration, at least one of which arose out of the Log Supply Agreement. Plaintiff acquiesced in the arbitration of all of those claims and counterclaims.

Another dispute arose out of defendant's failure to make the payments for logs delivered in accordance with paragraph 5 of the Log Supply Agreement. When defendant became insolvent, plaintiff demanded adequate assurances under ORS 72.6090 before delivering any more logs to defendant. When it received no such assurances, plaintiff demanded payment in advance of delivery. Meanwhile, plaintiff stored the logs it purchased from the Forest Service at a satellite log yard.

Plaintiff then initiated this action for breach of contract and declaratory judgment. In its complaint, plaintiff alleged that it had delivered logs to defendant, as required in the Log Supply Agreement. It alleged that it had invoiced defendant for those logs, in accordance with the Log Supply Agreement, and that defendant had failed to make the payments required under the Log Supply Agreement. It further alleged that it had provided defendant with all appropriate

notices required by the Log Supply Agreement, that defendant's actions constituted a breach of the Log Supply Agreement, and that the court should declare the Log Supply Agreement terminated.

The complaint does not mention the Log Yard Agreement.

Defendant moved for an order abating the action on the ground that the controversy was subject to arbitration. According to defendant, when the Log Yard Agreement provided for arbitration of controversies or claims arising out of or relating to "this Agreement," it meant all of the agreements that were executed in connection with the purchase of the sawmill, not just the Log Yard Agreement. The trial court disagreed with defendant's reading of the arbitration clause. It found that

> "if we're starting with a clean slate I would agree with Plaintiff's position, at least so far as the—the fact that at least on the face of the agreements it appears that since it's a matter of contract, the—language of the agreements show that they do not have the same subject matter, and at least from my point of view they're not intertwined in a manner that would force arbitration."

Nevertheless, the trial court granted defendant's motion. It decided that, although the language of the arbitration provision in the Log Yard Agreement did not appear to require arbitration of disputes arising under the Log Supply Agreement, the fact that the parties had previously agreed to arbitrate a Log Supply Agreement dispute was evidence that the parties intended the arbitration clause in the Log Yard Agreement to apply to disputes arising out of both contracts.

On appeal, plaintiff argues that the trial court erred in ordering the parties to arbitrate plaintiff's claim that defendant had breached the Log Supply Agreement, because that agreement contains no arbitration clause. Defendant argues, as it did before the trial court, that the arbitration clause in the Log Yard Agreement should be construed to apply even to Log Supply Agreement disputes, because both

agreements are really part of a single agreement for the purchase and sale of the sawmill.[1]

We are always constrained to construe contracts so that all parts are given effect and none are ignored. *Automotive Equipment Co. v. 3 Bees Logging Co.*, 251 Or 105, 111, 444 P2d 1019 (1968); *Standley v. Standley*, 90 Or App 552, 556, 752 P2d 1284, *rev den* 306 Or 413 (1988). We are, likewise, to avoid creating inconsistencies or interpreting contract terms in a manner that cannot reasonably be supported by the language to which the parties actually agreed. *Swanson v. Warner*, 125 Or App 524, 528, 865 P2d 493 (1993). Construing the reference to "this Agreement" in the Log Yard Agreement to mean all four agreements executed in connection with the purchase runs afoul of these basic principles of construction.

The language of the Log Yard Agreement makes clear that disputes "arising out of or relating to this Agreement" refers to the Log Yard Agreement alone. At one point in the Log Yard Agreement, for example, a distinction is drawn between "[t]his Agreement, the Lease, the Log Supply Agreement and the documents delivered in connection with the Acquisition" of the sawmill. "This Agreement" is not the Log Supply Agreement, nor is it the lease agreement or the purchase agreement; those are separately referenced by name. To construe "this Agreement" as defendant suggests would mean that the clause really means "the Log Supply Agreement, the Lease, the Log Supply Agreement and the documents delivered in connection with the Acquisition." That makes no sense.

Similarly, the notice clause in the Log Yard Agreement specifies how notice must be given in case of breach of

---

[1] Defendant also argues that, because plaintiff previously acquiesced to arbitration of a claim brought under the Log Supply Agreement, it should be judicially estopped from taking a different position in this case. "Judicial estoppel" precludes a party from successfully asserting one position in court and then later taking a contradictory position on the same issue. *Caplener v. U.S. National Bank*, 317 Or 506, 518, 857 P2d 830 (1993); *see also Stevens Technical Services, Inc. v. SS Brooklyn*, 885 F2d 584, 588 (9th Cir 1989); *Allen v. Zurich Ins. Co.*, 667 F2d 1162, 1167 (4th Cir 1982). The doctrine applies only when the party asserting it establishes that it detrimentally relied on the position taken in the earlier proceeding. *Marshall v. Korpa*, 118 Or App 144, 148, 846 P2d 445, *rev den* 316 Or 528 (1993). Here, defendant makes no argument that it has detrimentally relied on a position that plaintiff previously asserted in court.

specified paragraphs that are unique to "this Agreement." Moreover, the notice clause in the Log Yard Agreement requires that notice given pursuant to "this Agreement" be accomplished in a different manner than is described in the other agreements. If "this Agreement" means "the Log Supply Agreement," or worse, all four agreements, the reference becomes absurd.

In the same manner, the assignment clause in the Log Yard Agreement provides for transfers of interest pursuant to section 6(f) of "this Agreement." The words "this Agreement" must refer to the Log Yard Agreement only, because there is no section 6(f) in the other agreements.

In short, every reference to "this Agreement" in the Log Yard Agreement clearly and unambiguously refers to the Log Yard Agreement, and not to the other instruments executed the same day. To adopt defendant's proposed construction of the arbitration clause would require us to ignore that fact. It would require us either to construe "this Agreement" to refer to all four related contracts whenever the phrase appears in the Log Yard Agreement or to construe the same phrase to mean one thing on one paragraph and another thing in another paragraph. Neither alternative is reasonable.

The majority posits an alternative theory for requiring arbitration in this case, albeit one that was not argued by the parties. According to the majority, even if the reference to "this Agreement" in the arbitration clause of the Log Yard Agreement refers only to that agreement, the parties' dispute in this case arises out of or relates to that agreement. The majority reasons that, although the complaint alleges only that defendant failed to pay amounts due under paragraph 5 of the Log Supply Agreement, one of the amounts due under paragraph 5 is defined by cross-reference to the Log Yard Agreement, and that makes plaintiff's dispute one "arising out of or relating to" the Log Yard Agreement. I have several problems with that reasoning.

To begin with, I harbor some misgivings about the majority deciding this matter of contract construction on a basis that was not argued to us. It is inconsistent with a substantial body of law holding that the parties to an appeal

are restricted to the theory upon which their case was argued. *See, e.g., Millers Mut. Fire Ins. Co. v. Wildish Const. Co.*, 306 Or 102, 107, 758 P2d 836 (1988); *Kentner v. Gulf Ins. Co.*, 298 Or 69, 74, 689 P2d 955 (1984); *Leiser v. Sparkman*, 281 Or 119, 122, 573 P2d 1247 (1978); *Bergman v. Holden*, 122 Or App 257, 260, 857 P2d 217, *rev den* 318 Or 170 (1993). Moreover, it strikes me as risky business to attempt to construe complex and highly technical agreements without the benefit of briefing and argument by the parties to the agreements.

Further, the majority's line of reasoning ignores the nature of plaintiff's complaint and flatly conflicts with the language of both agreements. The only dispute alleged in plaintiff's complaint involves defendant's failure to pay "Allocated Stumpage Costs * * * Log Yard and Logging Costs and Reasonable Administrative Fees." The obligation to make those payments arises only under paragraph 5 of the Log Supply Agreement, not the Log Yard Agreement. To reach that conclusion requires no exercise in contract construction; it is what the Log Supply Agreement says. Not even defendant suggests otherwise.

To be sure, the Log Supply Agreement describes the amount due for one of the categories of payments — Log Yard Costs — by way of cross-reference to the Log Yard Agreement, which specifies a payment of $8 per thousand board feet of lumber. The majority theorizes that the reference to Log Yard Costs must mean that there is a dispute about whether the parties performed their obligations under the Log Yard Agreement. I do not understand why that is so. Plaintiff alleges a breach of defendant's obligation to pay Log Yard Costs as stated in the Log Supply Agreement, not the Log Yard Agreement. Indeed, the Log Supply Agreement provides that the Log Yard Costs are to be whatever amount is stated in the Log Yard Agreement "whether or not the Log Yard Agreement is then in effect." In other words, as far as payments due under the Log Supply Agreement are concerned, obligations under the Log Yard Agreement are irrelevant.

That the obligation to pay the Log Yard Costs under paragraph 5 of the Log Supply Agreement arises out of that agreement, and no other, is further borne out by the Log Yard

Agreement itself, which says that an obligation to pay Log Yard Costs is imposed by the Log Yard Agreement only *"to the extent [Log Yard Costs are] not paid under the Log Supply Agreement."* Again, that reading of the language in the agreements requires no exercise of construction of ambiguous terms. It is what the agreements say. And no party suggests otherwise.

Even if the majority is correct that the dispute arising out of defendant's failure to pay the Log Yard Costs is arbitrable, I do not understand why it makes plaintiff's entire case subject to arbitration. Plaintiff's complaint alleges that defendant breached the Log Supply Agreement by failure to pay "Allocated Stumpage Costs * * * Log Yard and Logging Costs and Reasonable Administrative Fees." Even if the failure to pay Log Yard Costs arguably implicates the Log Yard Agreement, the failure to pay other costs does not. Those costs are defined by the Log Supply Agreement. The obligation to pay them arises under the Log Supply Agreement. And the services for which they are required are described in the Log Supply Agreement. At the very least, the trial court erred in ordering the entire case arbitrated when, even under the majority's analysis, only one portion of it arguably arises under the Log Yard Agreement.

Warren, Deits and Edmonds, JJ., join in this dissent.