MEMORANDUM **
Foothill Capital Corporation (“Foothill”) appeals a summary judgment in a declaratory proceeding filed by Ketchikan Pulp Company (“KPC”) after KPC’s sale of corporate assets to Gateway Forest Products, Inc. (“Gatewa/’), financed by Foothill, collapsed in bankruptcy. The parties here, KPC, the unpaid seller, and Foothill, the secured creditor whose security declined in value in the bankruptcy of Gateway, both moved for summary judgment on the meaning of the Asset Purchase Agreement and the Ancillary Agreements memorializing various terms and conditions of the sale, transfer, security, and partial performance thereof.
Two particular sums of money are in debate. One sum, approximately $374,000, currently in KPC’s lawyer’s trust account, is the proceeds of an equipment sale mandated by the bankruptcy court. The other sum, approximately $167,000, is allegedly owed to Foothill, as Gateway’s successor, *116 by KPC under two of the Ancillary Agreements (the Operations and Office Agreements). In late 2002, Foothill made demands on KPC for the surrender of both sums of money. KPC filed a complaint for declaratory relief in the Alaska Superior Court. Foothill removed to the United States District Court for the District of Alaska on diversity grounds. The parties then filed cross-motions for summary judgment.
The district court determined that, under Oregon law, the Asset Purchase Agreement and Ancillary Agreements constitute a single contract. It held that KPC properly recouped the amount it allegedly owed to Foothill under the Operations and Office Agreements. The court also held that an agreement executed by Foothill and KPC, the Intercreditor and Subordination Agreement (“Intercreditor Agreement”), applied only to amounts secured by a promissory note, not to the proceeds of the equipment sale. Finally, the district court held that KPC did not waive any of its contractual rights. It denied Foothill’s motion for summary judgment and granted KPC’s motion for summary judgment.
We apply de novo review in order to determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. See Seattle Parents Involved in Cmty. Schs. v. Seattle Sch. Dist., 377 F.3d 949, 959 n. 14 (9th Cir.2004); Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir.2004).
I. The Equipment Sale Proceeds
Foothill concedes that if the Asset Purchase Agreement and the Ancillary Agreements constitute a single contract, then it does not have an enforceable right to the proceeds of the equipment sale.
Construing Oregon law, this court has stated that “[i]t is ... a basic principle of contract law that two or more agreements executed at the same time by the same parties as a part of the same transaction should be construed together as one contract.” Union Pac. R.R. Co. v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 549 F.2d 114, 117 (9th Cir.1976). Oregon courts apply the same principle. See, e.g., Hays v. Hug, 243 Or. 175, 412 P.2d 373, 374 (1966) (en banc); Snow Mountain Pine, Ltd. v. Tecton Laminates Corp., 126 Or.App. 523, 869 P.2d 369, 372 (1994) (en banc).
Foothill argues that KPC and Gateway intended to enter into a series of separately enforceable contracts, and that this intent is shown primarily through four factors: (1) the integration clause in the Equipment Purchase Agreement, (2) the terms of the Asset Purchase Agreement, (3) terms included in and omitted from the Equipment Purchase Agreement, and (4) the behavior of KPC following the Gateway breach. Foothill’s arguments are not persuasive. We therefore affirm the district court and hold that, under Oregon law, the Asset Purchase Agreement and the Ancillary Agreements should be construed together as one contract.
Even if the Equipment Purchase Agreement was a separate contract, Foothill does not have a claim to the proceeds of the equipment sale because that agreement required Gateway to purchase certain equipment from KPC when KPC “cease[d] to require” the equipment, or on January 1, 2007, whichever was later. According to the language of the agreement, “title to the Retained Equipment shall at all times during the term of this Agreement remain in KPC. [Gateway] does not and will not have or obtain any title to the Retained Equipment, nor any property *117 right or interest, legal or equitable, therein except as expressly set forth in [the] Agreement.” Thus, even if we construed the Asset Purchase Agreement and Ancillary Agreements as separate contracts, the express terms of the Equipment Purchase Agreement do not support Foothill’s claim to the equipment proceeds.
II. The Unpaid Operations and Office Agreements
Following Gateway’s initial breach, KPC, relying on the doctrine of recoupment, withheld payments owed to Gateway under the Office and Operations Agreements. Foothill alleges that, even if recoupment was otherwise proper under general contract law, the Intercreditor Agreement prohibited such an act.
Four days before the Asset Purchase Agreement and Ancillary Agreements were finalized, KPC and Foothill entered into an Intercreditor Agreement which gave Foothill a senior security interest in all of “the Collateral” to secure “the Preferred Senior Debt.” “Collateral” is defined as:
(a) all of [Gateway’s] presently existing and hereafter acquired personal property, including ... Accounts., and (e) all of the foregoing, whether now owned or existing or hereafter acquired or arising or in which [Gateway] now has or hereafter acquires any rights.
In addition, the Intercreditor Agreement states that “any claim or a right to set-off shall be treated in all respects as a security interest and no claimed right of set-off may be asserted to defeat or diminish the rights or priorities provided for herein.” Foothill asserts that KPC’s claims for damages against Gateway should be treated as a competing security interest in the collateral and therefore subordinated. Furthermore, Foothill argues that the agreement expressly prohibited KPC from exercising recoupment to diminish the value of Foothill’s security interest.[1] In its defense, KPC argues that the Intercreditor Agreement is limited in scope to subordinating only payment obligations arising under the KPC $6 million promissory note.
The language of the Intercreditor Agreement, if read in the light most favorable to Foothill, against whom summary judgment was granted, gives Foothill a security interest in the amount KPC recouped.[2] The Intercreditor Agreement gives Foothill a senior security interest in all of Gateway’s Collateral. The contract’s definition of “collateral” encompasses “accounts.” KPC’s rent and other obligations under the Office and Operations Agreements are an example of an account. See Or.Rev.Stat. § 79.0102(l)(b) (2003) (defining “account”). Under normal circum *118 stances, then, KPC would have to pay Foothill under the Operations and Office Agreements.
Recoupment, however, allows entities to apply their mutual debts that arise from the same transaction against each other. Newbery, 95 F.3d at 1390. Here, in the Intercreditor Agreement, KPC subordinated to Foothill’s senior security interest any right to recoupment to which KPC may otherwise have been entitled. Viewing the evidence in the light most favorable to Foothill, we will give effect to the meaning of the Intercreditor Agreement as thus construed. See Oregon Trail Elec. Consumers Coop., Inc. v. Co-Gen Co., 168 Or.App. 466, 7 P.3d 594, 600-06 (Or.Ct. App.2000) (setting forth Oregon’s rules of contract interpretation). Whether or not KPC’s action would be proper in the absence of the Intercreditor Agreement, the express terms of the Intercreditor Agreement are controlling.
III. Conclusion
We hold that, under Oregon law, the district court correctly construed the Asset Purchase Agreement and the Ancillary Agreements together as one contract. Thus, we affirm the district court’s grant of summary judgment on the issue of the proceeds of the equipment sale. However, the district court erred when it failed to give meaning to the Intercreditor Agreement’s language treating a claim of recoupment as a subordinated security interest; therefore we reverse the district court’s grant of summary judgment on the issue of recoupment. The case is remanded for further proceedings consistent with this disposition.
AFFIRMED in part, REVERSED in part, and REMANDED. Neither party to recover costs.

 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

. The parties refer to KPC's action as "recoupment.” The Intercreditor Agreement, however, prohibits "set-off,” which is analytically different than recoupment. See, e.g., Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1399-1400 (9th Cir.1996) (explaining the differences between set-off and recoupment). Although the Agreement does not mention recoupment, it appears to treat "any claim or a right to set-off ... as a security interest,” and appears to give Foothill a "first priority security interest in and lien on all of the Collateral to secure the Preferred Senior Debt,” and it must be so construed at least for purposes of Foothill’s appeal on the summary judgment granted against it. The language "any claim or a right to set-off” may be somewhat ambiguous in that it is not clear if "claim” is all-encompassing or merely refers to claims of set-off. This issue should be decided in further proceedings at the district court on the intent of the parties and a reading of the clause in its context.

. Whether the Intercreditor Agreement gives a priority security interest over a recoupment claim is an issue that cannot be resolved definitively without appropriate findings after trial.