Argued and submitted October 20, 1993, affirmed August 10, 1994

Marylin SHANNON,
*Appellant,*

*v.*

Rita SWYERS,
Craig Berkman and
Oregon Republican Party,
*Respondents.*

(9212-08159; CA A78731)

879 P2d 1339

Richard A. Derham argued the cause for appellant. With him on the briefs were Shelley Larkins and Davis Wright Tremaine.

Warren C. Deras argued the cause and filed the brief for respondents.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

HASELTON, J.

---

* Haselton, J., *vice* Durham, J.

## HASELTON, J.

Plaintiff petitioned for an order compelling defendants to arbitrate. ORS 36.310.[1] The trial court denied the order and dismissed plaintiff's petition. We affirm.

The proceeding resulted from a dispute that arose at the July, 1992, Oregon State Republican Convention at which defendant Swyers was elected as National Committeewoman. Plaintiff challenged the validity of the election. At the Republican National Convention in Houston in August, plaintiff met with Swyers and defendant Berkman, who was Chairman of the Oregon Republican Party at that time, in order to settle the dispute before the members of the Republican National Committee were seated at the convention. As a result of the meeting, the parties[2] executed an agreement on August 18, which provided, in part:

"3. Following the national convention, arbitrators will be chosen according to procedures recognized by the American Arbitration Association. This process must be completed by the end of November 1992.

"4. Between November 15, 1992 and December 15, 1992, a formal arbitration proceeding will be held in the city of Portland, Oregon. At this arbitration proceeding, all parties to this Agreement will have an opportunity to call witnesses, produce evidence and provide testimony as allowed for by the Rules of the American Arbitration Association. Furthermore, all parties agree to prehearing discovery as if this case were coming to trial in the State of Oregon."[3]

On October 14, plaintiff's counsel wrote to Swyers and Berkman. At the top of the letter is written, "Re: Request for Arbitration." It reads, in part:

---

[1] ORS 36.310 provides, in part:

"A party aggrieved by the failure, neglect or refusal of another to perform under a contract or submission providing for arbitration, described in ORS 36.305, shall petition the circuit court, or a judge thereof, for an order directing that the arbitration proceed in the manner provided for in the contract or submission."

[2] The agreement was also signed by Jim Bunn, who is not a party to this proceeding. The parties dispute whether Berkman's signature constituted signing by the Oregon Republican Party.

[3] Paragraph 6 sets out a procedure for a new election of a national committeewoman in the event the arbitrator holds the election invalid. The new election was to occur at a "statewide convention to be held no later than January 15, 1993 while the legislature is in session * * *."

"This is a formal notification that I represent Marilyn [*sic*] Shannon and on her behalf wish to advise you that she requests an arbitration proceeding * * * to be held pursuant to the agreement entered into * * *.

"So that we may promptly proceed to designate an arbitrator, please contact me with [the] name of your attorney or authorized representative."

On October 16, Berkman left a message with plaintiff's counsel that he would respond after the election, which was held on November 3. On November 11, counsel wrote attorney Deras, who served in a voluntary position as legal counsel to the Oregon Republican Party. Plaintiff's counsel wrote that, "[u]nless satisfactory progress is achieved by November 16," a suit to compel arbitration would be filed. That same day, he also phoned Deras, who told counsel that he knew nothing of the arbitration, but that Swyers was out of the country and was expected back later that week. Neither Deras nor Berkman knew whether Swyers had retained counsel before she left. On November 30, plaintiff's counsel received a letter from attorney Jack Faust stating that he expected to be representing Swyers and would get in touch when the fee issue was resolved.

On December 1, plaintiff filed her petition to compel arbitration. In dismissing plaintiff's petition, the trial court concluded that, under the agreement, she had the burden of proceeding with the arbitration in a timely manner, and that she had failed to do so.[4]

The parties' arguments on appeal center around whether the reference to the American Arbitration Association (AAA) procedures in section 3 of their agreement incorporated the notice requirement of AAA Rule 6, which

---

[4] The court stated:

"It appears to me that, I don't know if I would call it a statute of limitations problems [*sic*] or a laches problem, if laches applies, it seems to me that the plaintiff sat on her rights by not going forward in a proper manner to get this matter determined by the method that was selected by the parties when they drew the agreement."

Although defendants concede that there is no issue of laches, they argue that the time frame set out in the agreement was important, and that, to meet the deadlines, plaintiff was required to take prompt action after the convention.

provides that arbitration is commenced by the filing of written notice of intent to arbitrate.[5] Under Rule 6, the notice must be served on the opposing party "within the time period, if any, specified in the contract" and filed with AAA. Defendants assert that such notice is a prerequisite to the appointment of arbitrators under the AAA's procedures. If, as defendants contend, the AAA written notice requirement was incorporated in the agreement, plaintiff's noncompliance with that requirement could bar any entitlement to arbitration.

Plaintiff counters that the agreement's reference to "procedures recognized by the AAA" in paragraph 3 specifically refers to procedures for choosing arbitrators, to calling witnesses, and taking testimony, as explicitly stated in paragraphs 3 and 4, and that no other references to AAA rules appear. Thus, she contends, the agreement shows that the parties did not intend to incorporate any remaining AAA rules, including the written notice of intent to arbitrate. Plaintiff argues that notice was not necessary because the parties agreed to arbitrate an existing dispute and that they all understood that their next obligation was to choose an arbitrator.

---

[5] AAA Rule 6 provides:

"Arbitration under an arbitration provision in a contract shall be initiated in the following manner:

"(a) The initiating party (hereinafter claimant) shall, within the time period, if any, specified in the contract(s), give written notice to the other party (hereinafter respondent) of its intention to arbitrate (demand), which notice shall contain a statement setting forth the nature of the dispute, the amount involved, if any, the remedy sought, and the hearing locale requested, and

"(b) shall file at any regional office of the AAA three copies of the notice and three copies of the arbitration provisions of the contract, together with the appropriate filing fee as provided in the schedule on page 21.

"The AAA shall give notice of such filing to the respondent or respondents. A respondent may file an answering statement in duplicate with the AAA within ten days after notice from the AAA, in which event the respondent shall at the same time send a copy of the answering statement to the claimant. If a counterclaim is asserted, it shall contain a statement setting forth the nature of the counterclaim, the amount involved, if any, and the remedy sought. If a counterclaim is made, the appropriate fee provided in the schedule on page 21 shall be forwarded to the AAA with the answering statement. If no answering statement is filed within the stated time, it will be treated as a denial of the claim. Failure to file an answering statement shall not operate to delay the arbitration."

In *Portland Assn. of Teachers v. School Dist. No. 1,*
51 Or App 321, 327, 625 P2d 1336 (1981), we held:

> "The presence of ambiguous language in a contract, whether
> in the arbitration clause or the substantive portions of the
> contract itself, is precisely the situation in which the ques-
> tion of arbitrability is one to be decided by the arbitrator."

It follows that resolving the ambiguity of what provisions of
the AAA rules were incorporated in the agreement would be a
question for the arbitrator.

However, it does not follow that even if there were an
otherwise arbitrable ambiguity, the trial court was obliged to
order arbitration. In *Moresi v. Nationwide Mutual,* 309 Or
619, 789 P2d 667 (1990), the Supreme Court noted that,
before a court may compel arbitration under ORS 36.310,
more must be shown than the mere existence of a dispute that
is arguably subject to an agreement to arbitrate. A plaintiff
must further prove the "statutory condition precedent" that
a defendant has "failed, neglected or refused to arbitrate in
accordance with a contract arbitration provision." 309 Or at
622-23.

In *IFG Leasing Co. v. Snyder,* 77 Or App 374, 713
P2d 630 (1986), we discussed the interplay of ORS 36.310
with an agreement providing for arbitration under AAA
rules.[6] In that case, the defendant defaulted on a lease agree-
ment which contained a provision for AAA arbitration. The
plaintiff requested arbitration, gave the defendant notice,
and then proceeded with the *ex parte* process now found in
AAA Rule 30.[7] When the plaintiff sought to have the arbitra-
tion award filed with the court, the defendant objected, argu-
ing that the award was void because the plaintiff had not
complied with the statutory procedure by obtaining a court
order to compel arbitration.

---

[6] At that time, the statute was codified at ORS 33.230.

[7] AAA Rule 30 provides:

"Unless the law provides to the contrary, the arbitration may proceed in the
absence of any party or representative who, after due notice, fails to be present or
fails to obtain a postponement. An award shall not be made solely on the default
of a party. The arbitrator shall require the party who is present to submit such
evidence as the arbitrator may require for the making of an award."

We rejected the defendant's position. We noted that, by agreeing to have their dispute resolved by the AAA rules, the parties agreed to be bound by those rules:

"Given the parties' agreement, the question is whether an order under [ORS 36.310] was, nevertheless, necessary as a pre-condition to proceeding with arbitration or whether the statute's purpose is to establish additional procedures for compelling arbitration when the parties have not agreed to a method of proceeding if one party refuses to arbitrate. * * *

"* * * * *

"The overwhelming weight of authority is that, when, as here, the objecting party is not required under the contract to participate in the selection of the arbitrator, the arbitration, otherwise proper, may proceed in the objecting party's absence. * * * *An order compelling arbitration is necessary only when one party refuses to participate in the arbitration and the parties have made no provision for arbitration in the face of such refusal. It is only where the arbitration may not proceed under the provisions of the contract without a court order that the other party is really aggrieved.* * * *

"* * * * *

"Because plaintiff was entitled to proceed under the agreement without the cooperation or participation of defendant, it was not 'aggrieved' by defendant's refusal to arbitrate, and [ORS 36.310] is not applicable." 77 Or App at 378-381. (Emphasis supplied.)

Plaintiff here is in the same position as was the defendant in *IFG Leasing Co.* The agreement here did not require defendants to participate in the selection of arbitrators, who were to "be chosen according to procedures recognized" by the AAA. Whether or not that language *required* plaintiff to provide written notice, nothing in the agreement precluded her from doing so and, like the plaintiff in *IFG Leasing Co.*, unilaterally availing herself of the AAA's procedures. For example, AAA would have had the power under Rule 13 to make the appointment of an arbitrator "[i]f the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists * * *."

ORS 36.310 authorizes a court to compel arbitration only when a party to an agreement to arbitrate is "aggrieved

by the failure, neglect or refusal" of the other party to perform. ORS 36.310. Here, the AAA procedures provided plaintiff with an avenue whereby she could unilaterally proceed with arbitration. Because plaintiff was entitled to proceed whether defendants acted or not, she has not been *aggrieved* by their alleged "failure, neglect or refusal" to arbitrate. Consequently, the trial court lacked authority to compel arbitration under ORS 36.310.

Affirmed.